## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**TAQ WILLOW GROVE, LLC**

               **PLAINTIFF**

    vs.

**TWIN CITY FIRE INSURANCE**

             **DEFENDANT(S)**

Docket: 2:20-cv-03863

HONORABLE GENE E.K. PRATTER

---

## MEMORANDUM OF LAW OF PLAINTIFF, TAQ WILLOW GROVE, LLC, IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO RULE 12(B)(6)

---

**MATTLEMAN, WEINROTH, & MILLER, P.C.**
401 Rt. 70 East, Suite 100
Cherry Hill, NJ 08034
(856) 429-5507
Attorneys for Plaintiff
      Taq Willow Grove, LLC

                    Robert W. Williams, Esq. (315501)
                    rwilliams@mwm-law.com

                    Ashley S. Nechemia, Esq (325610)
                    anechemia@mwm-law.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................ ii

PRELIMINARY STATEMENT ................................................ 1

PROCEDURAL HISTORY ................................................... 3

STATEMENT OF FACTS .................................................. 4

LEGAL ARGUMENT ..................................................... 10

  A.     STANDARDS OF REVIEW ......................................... 10

    i.   Standard of Review for Rule 12(b)(6) Motion to Dismiss. .... 10

    ii.  Pennsylvania Courts Interpret Insurance Coverage Clauses
    Liberally to Effectuate the Reasonable Expectations of the Insured.
     12

  B.   TAQ'S CLAIM OF "DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY"
IS CONSISTENT WITH PENNSYLVANIA LAW AND SUPPORTED BY NATIONWIDE
AUTHORITY. ......................................................... 13

    i.   Taq suffered direct physical loss of or damage to property
    because its property was rendered unusable for its intended
    purpose. ....................................................... 14

    ii.  The Court should apply New Jersey case law under *Hardinger*. 16

    iii.   The early COVID-19 Business Interruption cases cited by
    Defendant are inconsistent with Pennsylvania law and of no
    persuasive value. .............................................. 21

    iv.  Out of State Authority supports finding coverage. .......... 26

    v.   The reasonable expectations of the insured dictate that the
    definition of "property damage" in the Business Liability Coverage
    Form of the Policy would apply to all sections of the policy. ... 29

  C.   TAQ IS ENTITLED TO "CIVIL AUTHORITY" COVERAGE BECAUSE IT WAS
DENIED ACCESS TO ITS PROPERTY AS A RESULT OF PROPERTY DAMAGE. ..... 30

  D.   ISSUES PERTAINING TO THE VIRUS EXCLUSION ARE NOT RIPE FOR
DISPOSITION. ...................................................... 34

    i.   The virus exclusion may not be considered on a rule 12(b)(6)
    motion to dismiss. ............................................. 34

    ii.  The Virus Exclusion does not exclude direct physical losses
    resulting from viruses. ........................................ 37

    iii.  Factual issues relating to Plaintiff's regulatory estoppel
    claim require denial of Defendant's motion to dismiss. ......... 40

CONCLUSION ........................................................ 44

# TABLE OF AUTHORITIES

*Cases*

*10E, LLC v. Travelers Indemnity Co. of Connecticut,*
  No. 2:20-cv-04418-SVW-AS, 2020 WL 535653 (C.D. Cal. Aug. 28, 2020) -------------- 22

*703 Bienville Partners. Ltd. v. Assurance Co. of Am.,*
  67 Fed. Appx. 248, 2003 WL 21145725 (5th Cir. 2003) --------------------------- 31

*Alea London Ltd. v. Rudley,*
  No. Cov. A. 03-CV-1575, 2204 WL 1563002 (E.D. Pa. July 13, 2004) ------------------ 35

*Allen v. Metropolitan Life Ins. Co.,*
  44 N.J. 294(1965) ------------------------------------------------------------------- 29

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937 (2009) ----------------------------------------------- 10

*Bensalem Tp. v. International Surplus Lines Ins. Co.,*
  38 F.3d 1303(3rd Cr. 1994) ------------------------------------------------------- 13

*Borough of Moosic v. Darwin Nat. Assur. Co.,*
  556 Fed. Appx. 92(3rd Cir. 2014) ------------------------------------------------ 34

*Canal Ins. Co. v. Underwriters at Lloyd's London,*
  435 F.3d 431(3rd Cir. 2006) ----------------------------------------------------- 34

*Certain Underwriters at Lloys of London v. Creagh,*
  563 F. Appx. 209 (3rd. Cir. 2014) ----------------------------------------------- 35

*Cleland Simpson Co. v. Fireman's Ins. Co.,*
  11 Pa.D. & C.2d 607, 1958 WL 7226 (C.C.P. 1957), *aff'd without opinion*, 140
  A.2d 41 (Pa. 1958) -------------------------------------------------------------- 33

*Colorcon, Inc. v. Lewis,*
  292 F. Supp. 2d 786 (E.D. Pa. 2011) ---------------------------------------------- 13

*Columbiaknit v. Affiliated FM Ins. Co.,*
  1999 WL 619100 (D. Or. Aug. 4, 1999) -------------------------------------------- 28

*Commstop v. Travelers Indem. Co. of Conn.,*
  No. 11-11257, 2012 WL 1883461 (W.D. La. May 17, 2012) -------------------------- 31

*Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.,*
  226 N.J. 403(2016) -------------------------------------------------------------- 43

*Dianoia's Eatery, LLC,*
  Case 2:20-cv-00706-NBF (W.D. Pa. May 15, 2020) ------------------------------ 14

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  No. 5:20-cv-461-DAE, 2020 WL 472305 (W.D. Tex. Aug. 13, 2020) ------------------------ 24

*Dundee Mut. Ins. Co. v Maifjeremn*,
  1998 ND 222, 587 N.W.2d 191 (1998) ------------------------------------------------------ 28

*Essex v. BloomSouth Flooring Corp.*,
  562 F.3d 399(1st Cir. 2009) ------------------------------------------------------------------ 27

*Fowler v. UPMC Shadyside*,
  578 F.3d 203(3rd Cir. 2009) ------------------------------------------------------------- 10, 11

*Friends of Danny DeVito v. Wolf*,
  227 A.3d 872 (Pa. 2020) ------------------------------------------------------------------ 15, 33

*Gavrilides Management Co. v. Michigan Ins. Co.*,
  No. 20-258-CB-30 (Mich. Cir. Ct. July 1, 2020) --------------------------------------- 24, 27

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  2:12-CV-04418 WHW, 2014 WL 6675934(D.N.J. Nov. 25, 2014) ------------------------------- 19

*Hetrick v. Valley Mut. Ins. Co.*,
  15 Pa. D. & C.4th 271, 1992 WL 524309 (Pa. Com. Pl. 1992) -------------------------- 14, 15

*Hospitality Inc. v. Zurich Am. Ins. Co.*,
  393 F.3d 1137 (10th Cir. 2004) ------------------------------------------------------------ 31

*In re N.J. Title Ins. Litigation*,
  683 F.3d 451(3rd Cir. 2012) ---------------------------------------------------------------- 12

*J.C. Penney Life Ins. Co. v. Pilosi*,
  393 F.3d 356(3d Cir. 2004) ----------------------------------------------------------------- 13

*J.H. France Refractories Co. v. Allstate Ins. Co.*,
  578 A.2d 468(Pa. Super. Ct. 1990), *aff'd in part and rev'd in part*, 626 A.2d
  502 (Pa. 1993) ----------------------------------------------------------------------------- 13

*Kean, Miller, Hawtorne, D'Armond, McCowan & Jarman LLP v. Nat'l Fire Ins. Co.
  of Hartford*,
  No. 06-0770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ------------------------------- 31

*Lambi v. Am. Family Mut. Ins. Co.*,
  No. 4:11-CV-00906, 2012 WL 2049915 (W.D. Mo. June 6, 2012) ---------------------------- 35

*Lomma v. Ohio Nat. Life Assurance Corp.*,
  283 F. Supp.3d 240(M.D. Pa. Sep. 6, 2017) ------------------------------------------------ 34

*Madison Const. Co. v. Harleysville Mut. Ins. Co.*,
  735 A.2d 100(Pa. 1999) ------------------------------------------------------------------- 34

*Malaube, LLC v. Greenwhich Ins. Co.*,
  No. 20-cv-22616, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ------------------------------23

*Maryland Casualty Co. v. Reeder*,
  221 Cal. App. 3d 961 (1990) -----------------------------------------------------------------43

*Mayer v. Belichick*,
  605 F.3d 223(3rd Cir. 2010) -----------------------------------------------------------------11

*Mellin v. N. Sec. Ins. Co., Inc.*,
  167 N.H. 544(2015) --------------------------------------------------------------------------28

*Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co.*,
  No. 9534 CIVIL 2013, 2014 WL 11351696 (C.C.P. July 8, 2014) ----------------------------35

*MRI Healthcare Ctr. Of Glendale, Inc. State Farm Gen, Ins. Co.*,
  187 Cal. App. 4th 766 (2010) ----------------------------------------------------------------23

*Murray v. State Farm Fire & Cas. Co.*,
  203 W.Va. 477(1998) ------------------------------------------------------------------------28

*Narricot Industries, Inc. v. Fireman's Finds Ins. Co.*,
  2002 WL 31247972 (E.D. Pa. Sep. 30, 2002)------------------------------------------------32

*Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*,
  320 F. Supp. 3d 636 (E.D. Pa.2018), *aff'd*, 781 F. Appx. 57 (3rd Cir. 2019)-35

*Nautilus Ins. Co. v. Shawn Owens Inc.*,
  316 F. Supp. 3d 873 (E.D. Pa. 2018) ------------------------------------------------------35

*Optical Services USA v. Franklin Mutual Ins., Co.*,
  BER-L-3681-20 (N.J. Super. Ct. L. Div. Aug. 13, 2020) ---------------------------------19

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
  No. 1:03-cv-3154, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ---------------------------31

*Pension Ben Guar. Corp. v. White Consol. Industries, Inc.*,
  998 F.2d 1192(3rd. Cir. 1993) --------------------------------------------------------------11

*Phillips v. County of Allegheny*,
  515 F.3d. 224 (3rd Cir. 2008) --------------------------------------------------------------11

*Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3rd Cir. 2002) -----------------------------------------------------------passim

*Prosmuskin v. The Hanover Ins. Group*, Case 2:20-cv-02561-CDJ (E.D. Pa. August
  14, 2020) --------------------------------------------------------------------------------------14

*Rose's 1, LLC v. Erie Ins. Exch.*,
  No. 2020 CA-2424-B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) ---------------24

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa., Inc.,*
  105 F. Supp. 3d 464 (E.D. Pa. 2015) --------------------------------------------------------- 35

*Simon Wrecking Co. Inc. v. AIU, Ins. Co.,*
  541 F.Supp.2d 714(E.D. Pa. 2008) ----------------------------------------------------------- 41

*Ski Shawnee, Inc. v. Commonwealth Ins. Co..*
  No. 3:09-cv-2391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) -------------------------------- 31

*Sloan v. Phoenix of Hartford Ins. Co.,*
  207 N.W.2d 434(Mich. Ct. App. 1973) ------------------------------------------------------- 25

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.,*
  No. 20 Civ 3311 (VEC)(S.D.N.Y.) ---------------------------------------------------------25, 27

*Studio 417 Inc. v. The Cincinnati Ins. Co,*
  Civ. No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020) -------------------------------------26, 31

*Sun Co. v. Pa. Tpk. Comm'n,*
  708 A.2d 875(Pa. Commmth. Ct. 1998) ------------------------------------------------------- 13

*Sunbean Corp. v. Liberty Mut. Ins. Co.,*
  781 A.2d 1189(Pa. 2001) --------------------------------------------------------------------- 40

*The Inns by the Sea v. California Mut. Ins. Co.,*
  No. 20CV001274 (Cal. Sup. Ct. Aug. 6, 2020) ----------------------------------------------- 25

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.,*
  CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018) --------------------- 27

*Trans World Airlines, Inc. v. Hughes,*
  308 F.Supp. 679(S.D.N.Y. 1969), *supplemented,* 312 F.Supp. 478 (S.D.N.Y.
  1970), and *aff'd as modified,* 449 F.2d 51 (2d Cir. 1971), *rev'd sub
  nom. Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct.
  647, 34 L.Ed.2d 577 (1973) ------------------------------------------------------------------- 36

*TRAVCO Ins. Co. v. Ward,*
  715 F.Supp. 699(E.D. Va. 2010), *aff'd,* 504 F. App'x 251 (4th Cir. 2013) ------- 27

*Turek Enterprises, Inc. v. State Farm Mut. Auto Ins., Co.,*
  No. 20-cv-11655-TLL, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ------------------ 22

*Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, LTD.,*
  No. 6:20-cv-1174 (M.D. Fl. Sep. 24, 2020, Order denying motion to dismiss) 39

*Victaulic Co. v. Tieman,*
  499 F.3d 227(3rd Cir. 2007) ------------------------------------------------------------------- 34

*W. Fire Ins. Co v. First Presbyterian Church,*
  165 Colo. 34(1968) ----------------------------------------------------------------------------- 28

*Wakefern Foods Corp. v. Liberty Mut. Fire Ins. Co.,*
  968 A.2d 724(N.J. Super. App. Div. 2009) --------------------------------------------------------- 17, 18, 19

### *Rules*

Fed. R. Civ. Pro. 15(a)(2) ------------------------------------------------------------------------------- 11

Fed. R. Civ. Pro. 8------------------------------------------------------------------------------------------ 11

**PRELIMINARY STATEMENT**

This action involves a claim for Business Income insurance coverage as a result of losses and damages suffered because of COVID-19 and the following government shut-down orders. Taq Willow Grove, LLC ("Taq" or "Plaintiff"), a full-service restaurant, purchased a Spectrum Business Owner's Policy ("Policy") from Twin City Fire Insurance Company ("Twin City" or "Defendant"). The policy provides coverage for business income losses suffered as a result of "direct physical loss of" or "damage to property" and for losses caused by actions of civil authorities. Plaintiff's First Amended Complaint pleads two causes of action, breach of contract and for declaratory judgment. Plaintiff's Amended Complaint alleges that it suffered "direct physical loss of" or "damage to property" because its property was rendered unusable for its intended purpose as a result of Pennsylvania Governor Tom Wolf's March 19, 2020 closure order and March 23, 2020 Stay-at-Home Order.

Federal Courts, applying Pennsylvania law, have held that "direct physical loss of" and "damage to property" occur when a property is rendered unusable for its intended purpose. Likewise, the Pennsylvania Supreme Court has already held that COVID-19 can cause physical loss and property damage. Contrary to Defendant's

contention, Plaintiff need not plead or prove a structural modification or alteration to its property.

As of the filing of this brief, a limited number of state and federal courts have considered the issues presented in this case. While these cases present both favorable and unfavorable authority, the issues presented are fundamentally issues of state law. As such, the Court should be guided by Pennsylvania precedent when ruling on the instant motion.

Further, Defendant's contention that its 12(b)(6) motion should be granted because the policy contains a virus exclusion is misplaced. Pennsylvania law provides (1) that a denial of coverage based on an exclusion contained within the policy is an affirmative defense, and (2) affirmative defenses may not be considered on a Rule 12(b)(6) motion.

Further, Plaintiff does not concede that the virus exclusion is enforceable. As set forth below, Plaintiff contends that the doctrine of regulatory estoppel precludes the enforcement of the exclusion. Pennsylvania Courts have not hesitated to invalidate exclusions contained within an insurance policy that were approved as a result of misrepresentations made to state regulators. While certain documents such as Insurance Services Office, Inc. Circulars are in the public domain, discovery is needed as to the drafting history of the exclusion, submissions to state regulators, and prior claims settled for damages caused by

viruses. These matters are well beyond the scope of a Rule 12(b)(6) motion.

Finally, should the Court be inclined to dismiss the complaint, Plaintiff seeks leave to amend its complaint. The issues presented in this case are of great public importance and deserve adjudication on the merits after the completion of discovery; the public policy of the United States, as stated by President Trump[1], dictates same.

## PROCEDURAL HISTORY

Plaintiff commenced the instant action by way of complaint in the Philadelphia Court of Common Pleas under Case ID: 200601542 on June 25, 2020 [Doc. 1 Ex. "A"]. The two-count complaint included claims for breach of contract and declaratory judgment. *Id.* On August 7, 2020, Defendant filed a Notice of Removal [Doc. 1]. On August 8, 2020, Plaintiff filed a praecipe to dismiss defendant The Hartford Insurance Group [Doc. 4]. Defendant filed a motion to dismiss on August 14, 2020 [Doc. 5]. In response to

---

[1] Victor Reklaitis, MarketWatch, *Insurers face 'uh-oh moment' as Trump says some business-interruption policies should cover coronavirus claims*, April 13, 2020, retrieved from https://www.marketwatch.com/story/insurers-face-uh-oh-moment-as-trump-says-some-business-interruption-policies-should-cover-coronavirus-claims-2020-04-13 [last accessed August 11, 2020] ("You have people that have never asked for business-interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it," Trump said at the briefing. "And then when they finally need it, the insurance company says, 'We're not going to give it.' We can't let that happen.").

the motion to dismiss, Plaintiff filed an amended complaint ("First Amended Complaint" or "FAC") on August 28, 2020 [Doc. 7].  On September 11, 2020, Defendant filed a motion to dismiss the FAC [Doc. 10].  Accordingly, this response in opposition follows.

Additionally, this matter is subject to a pending application for consolidation before the Judicial Panel on Multidistrict Litigation.  *In Re: Hartford COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2963.  Briefing on the application for consolidation is closed and argument is scheduled for September 24, 2020 [Doc. 14].

## STATEMENT OF FACTS

Taq is a full-service restaurant located at 4001 Welsh Road, Willow Grove, PA 19090 ("Property"). Pl. FAC ¶¶ 7-8.  Taq purchased a Spectrum Business Owner's Policy from Twin City Mutual relative to the Property for the Policy Period of September 26, 2019 through September 26, 2020.  *Id.* at ¶¶ 9-12.

The Policy provides coverage for Business Income and action of Civil Authority.  Business Income coverage is provided, per the Policy, as follows:

### O. Business Income

**(1)**  We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the "scheduled premises", including personal

4

property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

**(2)** With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means: (a) The portion of the building which you rent, lease or occupy; and (b) Any area within the building or on the site at which the "scheduled premises" are located, but only of that area services, or is used to gain access to, the "scheduled premises".

. . . .

**(5)** With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the "scheduled premises" is rendered untenantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

*See* Deft. Mot. to Dismiss, Doc. 10-2 pg. 38 of 179. While the Policy's Civil Authority coverage clause provides:

**q. Civil Authority**

**(1)** This insurance is extended to apply to the actual loss of Business Income you sustain when access to the "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to the property in the immediate area of your "scheduled premises".

*Id.* at pg. 39 of 179.

Meanwhile, the Policy defines "Covered Cause of Loss" as "RISK OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded in Section B, EXCLUSIONS; or b. Limited in Paragraph A.4. Limitations; that follow." *Id.* at pg. 30 of 179 (capitalization in original).

On March 11, 2020, COVID-19 was declared to be a global pandemic by the World Health Organization. Pl. FAC ¶ 16. On March 13, 2020, the President of the United States of America declared a national emergency as a result of COVID-19. *Id.* at ¶ 17.

Governor Tom Wolf, the Governor of Pennsylvania, executed an executive order on March 19, 2020 ("Closure Order") providing:

> WHEREAS, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein.
>
> NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:
>
> Section 1: Prohibition on Operation of Businesses that are not Life Sustaining.
>
> All prior orders and guidance regarding business closures are hereby superseded.
>
> No person or entity shall operate a place of business in the Commonwealth that is not a life sustaining business regardless of whether the business is open to members of the public. This prohibition does not apply to virtual or telework operations (e.g., work from home), so long as social distancing and other mitigation measures are followed in such operations.
>
> Life sustaining businesses may remain open, but they must follow, at a minimum, the social distancing practices and other mitigation measures defined by the Centers for Disease

Control to protect workers and patrons. A list of life sustaining businesses that may remain open is attached to and incorporated into this Order.

Enforcement actions will be taken against non-life sustaining businesses that are out of compliance effective March 21, 2020, at 12:01 a.m.

Section 2: Prohibition on Dine-In Facilities including Restaurants and Bars.

All restaurants and bars previously have been ordered to close their dine-in facilities to help stop the spread of COVID-19.

Businesses that offer carry-out, delivery, and drive-through food and beverage service may continue, so long as social distancing and other mitigation measures are employed to protect workers and patrons. Enforcement actions will be taken against businesses that are out of compliance effective March 19, 2020, at 8 p.m.

Pl. FAC ¶ 21. A true and accurate copy of the Closure Order is attached hereto as Exhibit "A." On March 23, 2020, Governor Wolf issued a Stay-at-Home Order providing as follows:

WHEREAS, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

WHEREAS, as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and WHEREAS, I am charged with the responsibility to address dangers facing the Commonwealth of Pennsylvania that result from disasters. 35 Pa. C.S. § 7301(a); and

WHEREAS, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein. 35 Pa. C.S. § 7301(f); and

WHEREAS, in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend and rescind executive orders, proclamations and regulations and those directives shall have the force and effect of law. 35 Pa. C.S. § 7301(b); and

WHEREAS, in addition to my authority, my Secretary of Health has the authority to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. 1403(a); and

WHEREAS, these means include isolation, quarantine, and any other control measure needed. 35 P.S. § 521.5.

NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:

Section 1: Order to Stay at Home

All individuals residing in Allegheny County, Bucks County, Chester County, Delaware County, Monroe County, Montgomery County, and Philadelphia County are ordered to stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services. For employees of life sustaining businesses that remain open, the following child care services may remain open: group and family child care providers in a residence; child care facilities operating under a waiver granted by the Department of Human Services Office of Child Development and Early Learning; and, part-day school age programs

operating under an exemption from the March 19,
2020 business closure Orders.

A list of life sustaining businesses that
remain open is attached to and incorporated into
this Order. In addition, businesses that are
permitted to remain open include those granted
exemptions prior to or following the issuance of
this Order.

Individuals leaving their home or place of
residence to access, support, or provide life
sustaining services for themselves, another
person, or a pet must employ social distancing
practices as defined by the Centers for Disease
Control and Prevention. Individuals are permitted
to engage in outdoor activities; however,
gatherings of individuals outside of the home are
generally prohibited except as may be required to
access, support or provide life sustaining
services as outlined above.

Enforcement of this Order will commence at
8:00 PM on Monday, March 23, 2020. Section 2:
Effective Date and Duration This order is
effective immediately and will remain in effect
for a period of two weeks, specifically until
April 6, 2020.

Pl. FAC ¶ 23. A true and accurate copy of the Stay-at-Home Order

is attached hereto as Exhibit "B."

As a result, Taq was required to suspend its operations. Pl.

FAC ¶ 25. On or about March 23, 2020, Taq submitted a claim to

Twin City for coverage under the policy. *Id.* at ¶ 27. On or about

May 20, 2020, Twin City denied Taq's request for coverage. *Id.*

at ¶ 28. Consequently, the instant suit followed.

**LEGAL ARGUMENT**

**A. STANDARDS OF REVIEW**

    **i.   Standard of Review for Rule 12(b)(6) Motion to Dismiss.**

Defendant moves this Honorable Court for an order dismissing Plaintiff's First Amended Complaint because it fails, "to state a claim upon which relief may be granted." Fed. R. Civ. Pro. 12(b)(6). "When presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3rd Cir. 2009)(internal citations and quotations omitted). Pleadings must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

A complaint should be dismissed under Rule 12(b)(6) if no relief may be granted under any reasonable reading of the

complaint. *Phillips v. County of Allegheny*, 515 F.3d. 224, 231 (3rd Cir. 2008). A complaint may not be dismissed merely because it appears unlikely that a plaintiff can prove or ultimately prevail on the merits. *Id.* To survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), a plaintiff merely needs to state a "plausible claim for relief" *Fowler*, 578 F.3d at 211. Fed. R. Civ. Pro. 8 only requires a concise statement of the claim, including the grounds on which it is based, showing that the pleader is entitled to relief – this standard does not require "detailed factual allegations." *Phillips*, 515 F.3d at 233.

When evaluating a 12(b)(6) motion to dismiss, a court's review is limited to, "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010); *Pension Ben Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3rd. Cir. 1993)(" We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Further, "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "If a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit curative amendment, unless the amendment would be

inequitable or futile." *In re N.J. Title Ins. Litigation*, 683 F.3d 451, 462 (3rd Cir. 2012).

> **ii. Pennsylvania Courts Interpret Insurance Coverage Clauses Liberally to Effectuate the Reasonable Expectations of the Insured.**

The Third Circuit Court of Appeals has succinctly set forth the applicable standard for the interpretation of insurance contracts under Pennsylvania law.

> Pennsylvania law, under which this insurance policy must be interpreted, provides several well-settled principles governing the interpretation of insurance policies. As a threshold matter, the task of interpreting a contract is generally performed by a court, rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where an insurance policy provision is ambiguous, it is to be construed against the insurer and in favor of the insured.... An ambiguity exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense.
>
> Where, however, the language of an insurance contract is clear and unambiguous, a court is required to enforce that language. That is, a court must refrain from torturing the language of a policy to create ambiguities where none exist. In addition, wherever possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. The policy must be construed as a whole, not in discrete units. Thus, where the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy.

*J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004)(internal citations and quotations omitted). Further, "[a]ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable." *Colorcon, Inc. v. Lewis*, 292 F. Supp. 2d 786, 797 (E.D. Pa. 2011) *citing Sun Co. v. Pa. Tpk. Comm'n*, 708 A.2d 875, 878-79 (Pa. Commmth. Ct. 1998). Under Pennsylvania law the reasonable expectations of the insured been applied even when contrary to the express language of a policy. *Bensalem Tp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3rd Cr. 1994)(discussing evolution of reasonable expectations doctrine under Pennsylvania jurisprudence) *citing J.H. France Refractories Co. v. Allstate Ins. Co.*, 578 A.2d 468, 472 (Pa. Super. Ct. 1990), *aff'd in part and rev'd in part*, 626 A.2d 502 (Pa. 1993).

## B. TAQ'S CLAIM OF "DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY" IS CONSISTENT WITH PENNSYLVANIA LAW AND SUPPORTED BY NATIONWIDE AUTHORITY.

Defendant argues that Plaintiff is not entitled to Business Income coverage because Plaintiff did not suffer direct physical loss or direct physical damage to property and that Plaintiff's damages were not caused by direct physical loss or damage to its property. Deft. Br. at pg. 19. However, despite three federal courts in Pennsylvania, in cases with similar facts, noting that

the issues presented herein are matters of Pennsylvania law, Defendant fails to cite a single Pennsylvania case to support its argument. *Prosmuskin v. The Hanover Ins. Group*, Case 2:20-cv-02561-CDJ (E.D. Pa. August 14, 2020)[2] ("It is neither practical nor wise for this Court to attempt to predict how Pennsylvania would decide this novel and complex issue of state law when the discretion exists to allow Pennsylvania courts to address the matter for themselves."); *Dianoia's Eatery, LLC*, Case 2:20-cv-00706-NBF (W.D. Pa. May 15, 2020)[3] ("This Court has carefully considered each of the factors outlined above and concludes that Plaintiff's Complaint raises novel insurance coverage issues under Pennsylvania law which are best reserved for the state court to resolve in the first instance.").

> i. **Taq suffered direct physical loss of or damage to property because its property was rendered unusable for its intended purpose.**

The terms "direct physical loss of" and "damage to property" are not defined in the Policy. There is limited Pennsylvania case law on point. In *Hetrick v. Valley Mut. Ins. Co.*, 15 Pa. D. & C.4th 271, 274, 1992 WL 524309 (Pa. Com. Pl. 1992) the court held that contamination rendering an insured property uninhabitable constituted "direct loss." Specifically, the court held that an oil spill contaminating a homes water supply may render a home

---

[2] *See* Exhibit "C."
[3] *See* Exhibit "D."

uninhabitable and if the home was rendered uninhabitable it suffered a direct loss. *Id.*

In *Motorist Mutual Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 826 (3rd Cir. 2005), the court noted that, "[n]o Pennsylvania Supreme Court case, however, directly addresses whether loss of use may constitute a physical loss." After noting that *Hetrick* was instructive on the issue, the court, "predict[ed] that the Pennsylvania Supreme Court could adopt a similar principle as [it] did in *Port Authority[4]."* As such, the court concluded that under Pennsylvania law "direct physical loss of" or "damage to property" occurs when, "the functionality of the [] property [][is] nearly eliminated or destroyed or [] [the] property [] is made useless or uninhabitable." *Hardinger*, 131 Fed. Appx. at 827.

Further instructive on the issue is *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020), wherein the Pennsylvania Supreme Court addressed the constitutionality of Governor Wolf's Orders. The Court held that the COVID-19 pandemic qualifies as a "natural disaster" because it involves, "substantial damage to property, hardship, suffering or possible loss of life." *Id* at 887. Further, the Court concluded that the Stay-at-Home Order was constitutional because COVID-19, "spreads primarily through

---

[4] *Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3rd Cir. 2002). *Port Authority* is discussed in greater detail below.

person-to-person contact, has an incubation period of up to fourteen days, one in four carriers are asymptomatic, and the virus can live on surfaces up to four days. Thus, any location where two or more people can congregate is within the disaster area." *Id.* at 889-90. As such, *Devito* stands for the proposition that COVID-19 is capable of causing damage to property and that such property damage can occur regardless of the presence of COVID-19 at the subject property.

Accordingly, Plaintiff submits that its claim for Business Income coverage is supported by Pennsylvania law because its property has been rendered unusable for its intended purpose. *See* Pl. FAC ¶ 23.

### ii. The Court should apply New Jersey case law under *Hardinger*.

In *Hardinger*, the Third Circuit adopted *Port Authority*, a case applying New Jersey law, as Pennsylvania law. 131 Fed. Appx. at 826. The Third Circuit initially rejected the district court's conclusion that it should not apply *Port Authority* because it was decided under New Jersey law. *Id citing Motorist Mut. Ins. Co. v. Hardinger,* 2004 WL 34899, at 5 (E.D.Pa. Feb. 27, 2004). The court then went on to explain that, "[w]e find nothing, however, in New York, New Jersey, or Pennsylvania law that would cause us to disregard *Port Authority* under Pennsylvania law. Indeed, *Port Authority* noted that applicable state law provides no guidance,

and thus, it appears that nothing unique about the law of New York or New Jersey dictated the result. Nor does it appear that there is any substantive law in Pennsylvania at odds with *Port Authority*." *Hardinger*, 131 Fed. Appx. at 826. As such, Plaintiff submits that it should adopt the line of New Jersey cases addressing the issue as discussed below.

In *Wakefern Foods Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724, 734 (N.J. Super. App. Div. 2009) the New Jersey Appellate Division concluded that the term 'physically damaged' in an insurance policy was ambiguous and thus must be interpreted in accordance with the reasonable expectations of the insured. At issue in *Wakefern Foods* was an insurer's denial of a supermarkets claim for damages as a result of a blackout. *Id.* at 727-28. The insurer denied the claim for coverage contending that, "although the power grid was physically incapable of supplying power for four days, it suffered no 'physical damage' and therefore there was no coverage." *Id.* While the trial court entered summary judgment in favor of the insurer, the Appellate Division reversed and entered judgment as a matter of law in favor of *Wakefern Foods* while holding that the electrical system was physically damaged because it was "physically incapable of performing [its] essential function." *Id.* at 734. The *Wakefern Foods* Court noted that support for its holding can be found in many out of state opinions

which hold that 'physical damage' includes a loss of functionality or value. *Id.* at 736.

The *Wakefern Foods* Court, further found support for its holding in *Port Authority* despite the fact that the *Port Authority* Court did not apply normal contract and insurance policy interpretation rules because the policy at issue was drafted by the insured. *Wakefern Foods*, 986 A.2d at 737. While ultimately finding against coverage the *Port Authority* Court held, in the context of asbestos fibers, that "physical loss or damage" occurs when a property's "function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility." 311 F3d at 236. Notably, the *Port Authority* Court rejected the contention that 'physical damage' requires "a distinct, demonstrable, and physical alteration' of its structure," even when interpreting the policy in favor of the insurer. 311 F3d at 235.

More recently the United States District Court for the District of New Jersey addressed whether 'physical damage' occurred when an" ammonia release physically transformed the air within [a property] so that it contained an unsafe amount of ammonia or that the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated," in an

unpublished opinion. *Gregory Packaging, Inc. v. Travelers Prop.*
*Cas. Co. of Am.*, 2:12-CV-04418 WHW, 2014 WL 6675934, at *6 (D.N.J.
Nov. 25, 2014). The *Gregory Packaging* Court found in favor of
coverage and concluded that, "[t]he Wakefern decision indicates
that a property's temporary and non-structural loss of function is
recognized as direct physical loss or damage under New Jersey
law." *Id.* at *5.

Here, Taq's loss was the direct result of the Government
Orders and its property was unusable for its intended purpose[5].
Specifically, Taq's property suffered a "non-structural loss of
function" because of the Commonwealth's closure of all non-life-
sustaining businesses and Stay-at-Home order. *Gregory Packaging,*
2014 WL 6675934, at *5.

Moreover, as of the filing of this opposition, one New Jersey
Court has applied *Wakefern* to deny a motion to dismiss in a case
with strikingly similar facts. *Optical Services USA v. Franklin
Mutual Ins., Co.*, BER-L-3681-20 (N.J. Super. Ct. L. Div. Aug. 13,
2020)[6]. In *Optical Services*, "[p]laintiff allege that Executive

---

[5] Should the Court be inclined to dismiss Plaintiff's Complaint,
Plaintiff requests leave to file an amended pleading explicitly
averring that the presence of COVID-19 caused physical damage.
*See e.g.* Neetlje van Dormalen et al., *Aerosol and Surface Stability
of SARS-CoV-2 as compared with SARS-CoV-1*, 382 New Eng. J. Med.
1564 (2020).
[6] A copy of the *Optical Services* transcript and order is attached
hereto as Exhibit "E."

Order Number 107 mandated the closure of their businesses." *Id.* at 21. The insurer issued letters denying the plaintiffs claim for coverage. *Id.* "The plaintiff further allege that the policies issued by FMI provide coverage for loss of income resulting from a necessary interruption of plaintiff's businesses caused by direct covered losses and temporary closures required by orders of civil authorities." *Id.* at 22. The *Optical Services* Court found *Wakefern* "compelling for the purpose of surviving a Motion to Dismiss pursuant to Rule 4:6-1(e) in the absence of any complete record for disposition." *Id.* at 28. Further, the court noted that, "plaintiffs are offering in advancing a novel legal theory of insurance coverage in this matter that warrants denial of the Motion to Dismiss at this early state of the litigation. As such, [the] Court must afford the plaintiffs an opportunity to engage in issue-oriented discovery with FMI to fully establish the record with respect to direct covered losses." *Id.* at 29-30.

Consistent with *Hardinger*, this Court is urged to adopt the above discussed cases as an expression of Pennsylvania law and hold that "direct physical loss of" and "damage to property" occur when a property is rendered unfit for its intended purpose. 131 Fed. Appx. at 826.

### iii. The early COVID-19 Business Interruption cases cited by Defendant are inconsistent with Pennsylvania law and of no persuasive value.

Defendant relies on a select few early cases addressing claims for business income coverage involving COVID-19. Such cases are readily distinguishable and not consistent with Pennsylvania authority. However, before addressing the cited cases, Plaintiff must address the irreconcilable position advanced by Defendant. In footnote 20 of Defendant's brief it argues that decisions favorable to Plaintiff are, "inapplicable here because . . . it does not apply Pennsylvania law." Deft. Br. at pg. 20. Yet on the same page, Defendant argues that out-of-state decisions favorable to Defendant should be considered by the court. *Id.* Still elsewhere Defendant has argued that each case involving business interruption coverage must be decided independently. *See e.g. In Re: Hartford COVID-19 Business Interruption Insurance Protection Litigation,* MDL No. 2963, Doc. 174 (Aug. 26, 2020, Hartford's Response in Opposition to Order to Show Cause Pursuant to 28 U.S.C. § 1407)(arguing against centralization of COVID-19 Business Income litigation as the, "actions involve varied policy terms, the laws of at least 27 different states (without regard to unnamed purported class members), numerous orders of civil authority by state, county, and local governmental bodies, and policyholders engaged in a variety of different business activities."). Plaintiff agrees that this Court should be guided

by Pennsylvania law as enunciated in *Hardinger*. 131 Fed. Appx. 823.

In *Turek Enterprises, Inc. v. State Farm Mut. Auto Ins., Co.*, No. 20-cv-11655-TLL, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020), the court was presented with a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss. In *Turek* the court began its analysis with setting forth the relevant policy language which required "accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss . . . " *Id.* at *3. This language varies from the case and Policy at issue. The *Turek* Court specifically noted that policies that provide coverage for loss or damage, such as the Policy at issue, are distinguishable. *Id.* at *13. Further, the *Turek* Court neither discussed or distinguished Pennsylvania law when reaching its holding that, "'accidental direct physical loss to a Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property." *Id.* at * 14. The holding in *Turek* is irreconcilable with *Hardinger*. 131 Fed. Appx. 823.

Likewise, *10E, LLC v. Travelers Indemnity Co. of Connecticut,* No. 2:20-cv-04418-SVW-AS, 2020 WL 535653 (C.D. Cal. Aug. 28, 2020) is irreconcilable with Pennsylvania law. The *10E* Court, applying California law, dismissed a complaint seeking business income

coverage.  The court noted that, "[u]nder California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase.  Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'" *quoting MRI Healthcare Ctr. Of Glendale, Inc. State Farm Gen, Ins. Co.*, 187 Cal. App. 4th 766, 799 (2010).  Defendant has not cited to any Pennsylvania authority adopting a similar definition of 'direct physical loss of or damage to property", and Plaintiff is unaware of any such authority.  Moreover, despite dismissing the complaint, the *10E* Court granted leave to amend. *Id.* at * 9.

Defendant's reliance on *Malaube, LLC v. Greenwhich Ins. Co.*, No. 20-cv-22616, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) is particularly interesting.  In *Malaube* the court was presented with a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss in a case with general factual similarities to the present matter.  The *Malube* Court interpreted a policy clause providing coverage for "direct physical loss" or "direct physical damage," as requiring a structural or tangible alteration to the property.  *Id.* at * 12. Further, the court rejected the plaintiff's argument that it should adopt the "expansive definition of 'direct physical loss or damage,'" as set forth in *Port Authority*, because it would require the court, "to ignore both Eleventh Circuit and Florida precedent."

*Id.* at *20 *citing Port Authority*, 311 F. 3d at 236. Thus, the court expressly acknowledged that its holding is inconsistent with *Port Authority* which was adopted in *Hardinger*. 131 Fed. Appx. 823.

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-cv-461-DAE, 2020 WL 472305 (W.D. Tex. Aug. 13, 2020) is, likewise, distinguishable. First, the policy language at issue in *Diesel* was not identical to the Policy at issue here. *See id.* at * 5. The policy in *Diesel* provided, "we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under Section I – Covered Causes of Loss." *Id.* Next, the court held that direct physical loss requires a tangible alteration to the property. *Id.* at * 13. This holding is inconsistent with Pennsylvania law.

*Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA-2424-B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) is procedurally distinguishable from the instant matter. *Rose's 1* involved an application for summary judgment under D.C. Superior Court Rule 57 providing for 'speedy' resolution of declaratory judgement actions. This is not the case here, Taq seeks full discovery. As such, *Rose's 1* is of no persuasive value.

*Gavrilides Management Co. v. Michigan Ins. Co.*, No. 20-258-CB-30 (Mich. Cir. Ct. July 1, 2020)[7] likewise is of little value as the court only provided an oral opinion which fails to cite to any authority.    This is particularly interesting considering that a Michigan appellate court held that physical damage occurred despite the "physical integrity" of the property not being altered. *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 436 (Mich. Ct. App. 1973).    Thus, not only is *Gavrilides Management* inconsistent with Pennsylvania law, it is also inconsistent with Michigan law.

Likewise, *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC)(S.D.N.Y.)[8] offers little support for Defendant's motion to dismiss.  In *Social Life Magazine, Inc.*, the Court was presented with an application for injunctive relief in the context of a COVID-19 business interruption claim for insurance.  The Court did not conclude that coverage was precluded as a matter of law, the Court only held that the movant failed to satisfy the exceptionally high standard for injunctive relief. With due respect to counsel, it is difficult to comprehend the

---

[7] A copy of *Gavrilides Management Co.* is attached to Defendant's motion to dismiss as Exhibit "B."

[8] A copy of *Social Life Magazine, Inc.* is attached to Defendant's motion to dismiss as Exhibit "D."

thought process behind the application for injunctive relief. The case at bar solely involves legal damages.

Finally, Defendant relies on *The Inns by the Sea v. California Mut. Ins. Co.*, No. 20CV001274 (Cal. Sup. Ct. Aug. 6, 2020). This case is also of no persuasive value. Defendant attaches the transcript to the oral argument where the court indicated that it was taking the matter under advisement. Ultimately, the court granted the motion to dismiss without an accompanying memorandum or opinion. As such, the court did not provide any analysis and we are left wondering what the operative policy language was. Nevertheless, Defendant appears to rely on *The Inns by the Sea* for the proposition that California's closure order was issued out of fear of future exposure. Here, Governor Wolf's March 19, 2020 and March 23, 2020 Orders are at issue not California's closure order. Moreover, the Pennsylvania Supreme Court has already held that all properties where two or more people can congregate are within a disaster area. *Devito*, 227 A.3d 889-90.

Therefore, Taq submits that the cases cited by Defendant are of no persuasive value and that the motion to dismiss should be denied.

### iv.   Out of State Authority supports finding coverage.

Recently, the District Court for the Western District of Missouri Southern Division was faced with a motion to dismiss in

a case with nearly identical facts. *Studio 417 Inc. v. The Cincinnati Ins. Co,* Civ. No. 20-cv-03127-SRB (W.D. Mo. Aug. 12, 2020). The plaintiffs in *Studio 417* include a collection of hair salons and full-service restaurants that were subject to closure and stay-at-home orders following COVID-19. *Id.* at 1. The plaintiffs filed suit seeking coverage for, *inter alia*, business income and civil authority coverage. *Id.* at 2-3. The operative coverage clauses are identical to those at issue in the instant matter. *Id.* Relying on *Port Authority* for the proposition that, "even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose," the court held that "[p]laintiffs allege a causal relationship between COVID-19 and their alleged losses" and refused to dismiss the complaint. *Id.* at 10. Notably, the court considered *Gavrilides Management Co.* and *Social Life Magazine Inc.* and did not find either to be persuasive. *Id.* at 12.

Such cases are consistent with other federal case law holding that an impairment to the structural integrity of a property is not required to find 'direct physical loss of or damage to property.' *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009)(unpleasant odor that rendered property unusable constituted physical injury to the property); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp. 699, 709-10 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013)("When read in the context of the precedent

discussed above, this definition suggests that the parties intended to define 'direct physical loss' to include loss of use."); *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018)(holding that 'direct physical loss of or damage to' includes 'loss of use'); *Columbiaknit v. Affiliated FM Ins. Co.*, 1999 WL 619100 (D. Or. Aug. 4, 1999)("physical damage can occur at the molecular level and can be undetectable through a cursory inspection.").

State Supreme Courts throughout the country have likewise reached the same result. *Mellin v. N. Sec. Ins. Co., Inc.*, 167 N.H. 544, 546 (2015)(odor from cat urine caused direct physical loss, policy holder need not prove 'tangible physical alteration'); *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 492-93 (1998)(physical loss occurs when property becomes unusable); *W. Fire Ins. Co v. First Presbyterian Church*, 165 Colo. 34, 37 (1968)(gasoline vapors caused "direct physical loss"); *Dundee Mut. Ins. Co. v Maifjeremn*, 1998 ND 222, 587 N.W.2d 191 (1998)('damage' includes loss of use).

Simply put, the authority cited by Twin City' does not support their argument that the Government Orders are not capable of producing "direct physical loss of" or "damage to property" as a

matter of law.  As such, Plaintiff submits that the motion to dismiss should be denied.

> **v.   The reasonable expectations of the insured dictate that the definition of "property damage" in the Business Liability Coverage Form of the Policy would apply to all sections of the policy.**

Paragraph G(20)of the Business Liability Form defines, "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. *Loss of use of tangible property that is not physically injured.* All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it." *See* Deft. Mot. to Dismiss, Doc. 10-2 at pg. 78 of 179.  Plaintiff submits that the reasonable expectations of the insured dictate that this definition also apply to the Special Property Coverage Form, which contains the Business Income and Civil Authority coverages, as Defendant has failed to define the term "damage to property."  If Defendant wished to utilize a different definition in the Special Property Coverage Form, it could have easily done so.  Defendant is an "expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices." *Allen v. Metropolitan Life Ins. Co.*, 44 N.J. 294, 305 (1965). The Policy was issued in 2019 for the policy period of

September 26, 2019 to September 26, 2020, but is contained on a 2005 template.  Accordingly, Defendant was aware of the broad definition ascribed to "damage to property" by Third Circuit Courts and elected to continue utilizing the 2005 template without narrowing the definition.  Defendant's current attempt to narrow the definition of "direct physical loss of or damage to property" must be rejected as inconsistent with the Policy language and controlling case law.

## C. TAQ IS ENTITLED TO "CIVIL AUTHORITY" COVERAGE BECAUSE IT WAS DENIED ACCESS TO ITS PROPERTY AS A RESULT OF PROPERTY DAMAGE.

Defendant presents three arguments in support of its motion to dismiss Plaintiff's claim for civil authority coverage: 1. Plaintiff fails to allege any property damage: 2. The Civil Authority Orders in question did not completely prohibit access to the Property: and 3. The Civil Authority Orders issued to prevent future spread of COVID-19 not as a result of present or past property damage.  Plaintiff will address each in turn.

A logical reading of Plaintiff's FAC leads to the inference that property other than the insured property sustained damage. Specifically, the Complaint references the Commonwealth's March 19, 2020 and March 23, 2020 Orders.   For the same reasons that the insured property sustained damage from the orders 'stay-at-home' and closure provisions, surrounding properties of the

insured property suffered damage. *See e.g. Devito v. Wolf*, 227 A.3d 872 ((Explaining that property damage sustained as a result of government shut-down and stay-at-home orders is indistinguishable from property damage sustained from natural disasters such as hurricanes and fires and that all properties where two or more people may congregate are within the disaster zone).

Next, Defendant argues that Plaintiff is not entitled to coverage because Plaintiff has not alleged that access to its property was completely prohibited. Defendant cites several cases[9] standing for the proposition that, "[a] mere limitation or restriction does not suffice to trigger coverage; a complete prohibition is required." Deft. Br. at pg. 22. All the cases cited by Defendant are procedurally distinguishable because they involved motions for summary judgment, not motions to dismiss. Contrary to Defendant's argument, the issue is whether a complete prohibition of access to a portion of the premises is sufficient to find coverage not whether a partial prohibition to the entire

---

[9] *Hospitality Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004); *Commstop v. Travelers Indem. Co. of Conn.*, No. 11-11257, 2012 WL 1883461 (W.D. La. May 17, 2012); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*. No. 3:09-cv-2391, 2010 WL 2696782 (M.D. Pa. July 6, 2010); *Kean, Miller, Hawtorne, D'Armond, McCowan & Jarman LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-0770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-cv-3154, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004); *703 Bienville Partners. Ltd. v. Assurance Co. of Am.*, 67 Fed. Appx. 248, 2003 WL 21145725 (5th Cir. 2003).

premises is sufficient to find coverage.  As explained in *Studio 417*, "[w]ith respect to Plaintiffs' restaurants, the Closure Orders mandated 'that all inside seating is prohibited in restaurants,' and that 'every person in the State of Missouri shall avoid eating or drinking at restaurants," with limited exceptions for "drive-thru, pickup, or delivery options.' At the motion to dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage.   This is particularly true insofar as the Policies require that the 'civil authority prohibits access,' but does not specify 'all access' or 'any access' to the premises prohibited to such a degree as to trigger the civil authority coverage." *Studio 417* at 14; *see also Narricot Industries, Inc. v. Fireman's Finds Ins. Co.*, 2002 WL 31247972, at * 1, 4 (E.D. Pa. Sep. 30, 2002)(applying PA law, finding civil authority coverage where civil authority order prohibited a Tarboro, North Carolina plant from operating despite the order not actually prohibiting access to the plant.).  Plaintiff submits that the term 'prohibit', as used in the Policy is ambiguous.  As the court noted in *Narricot*, some policies require that access to the property be "prohibited", while other policies require that access be "specifically prohibited." *Id.* at *4.  Here, the Policy states "specifically prohibited." *See* Deft. Br., Doc. 10-2 at pg. 39 of 179.  Thus, when Defendant added the modifying word 'specifically' it could

have easily added an additional modifying word requiring a complete and total prohibition of access, but it chose not to. The Court should reject Defendant's attempt to rewrite to the Policy in terms more favorable to it.

Finally, Defendant argues that Plaintiff is not entitled to Civil Authority coverage because the orders were designed to prevent the future spread of COVID-19 as opposed to being issued as the result of past property damage. Deft. Br. at pg. 23. Defendant cites several cases holding that civil authority coverage is not applicable when the actions of civil authorities are issued out of fear of a future event. The cases cited by Defendant are procedurally distinguishable because they involved motions for summary judgment not motions to dismiss with the exception of *Cleland Simpson Co. v. Fireman's Ins. Co.*, 11 Pa.D. & C.2d 607, 1958 WL 7226 (C.C.P. 1957), *aff'd without opinion*, 140 A.2d 41 (Pa. 1958). Next, the civil authority orders at issue were not issued out of fear of a future event, the orders recognized the current and ongoing existence of a dangerous physical condition and were predicated on hard scientific evidence demonstrating the certainty of future harm rather than mere fear. *See Devito*, 227 A.2d at 898 ("In fact, COVID-19 cases have now been reported in all counties in the Commonwealth.").

As such, Defendant's motion should be denied.

**D. ISSUES PERTAINING TO THE VIRUS EXCLUSION ARE NOT RIPE FOR DISPOSITION.**

   **i.  The virus exclusion may not be considered on a rule 12(b)(6) motion to dismiss.**

Defendant seeks dismissal of Plaintiff's FAC based on the Virus Exclusion contained within the policy. However, "[w]here an insurer relies on a policy exclusion as the basis for its denial of coverage . . ., the insurer has asserted an affirmative defense, and accordingly, bears the burden of proving such defense." *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3rd Cir. 2006). As such a complaint is not subject to dismissal under Rule 12(b)(6), when the basis of an insurer's denial of coverage is based on an exclusion within the policy. *Victaulic Co. v. Tieman*, 499 F.3d 227, 234-34 (3rd Cir. 2007)("Generally speaking, [this Court] will not rely on an affirmative defense ... to trigger dismissal of a complaint under Rule 12(b)(6)."); *Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. Appx. 92, 98 (3rd Cir. 2014)(same); *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)("Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense."); *Lomma v. Ohio Nat. Life Assurance Corp.*, 283 F. Supp.3d 240, 262 (M.D. Pa. Sep. 6, 2017)("Defendants do not cite a single case where a Court granted an insurer's Rule 12(b)(6) motion to dismiss a breach of

contract claim based on the application of an exclusion provision in any insurance policy. . . . In sum, Defendants have not satisfied their burden.").

Defendant's argument that, "Courts in this Circuit routinely grant motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion of coverage," is contrary to the above cited authority and not supported by the authority cited by Defendant. Deft. Br. at pg. 5. The cases cited by Defendant primarily involved Rule 12(c) motions[10] and motions for summary judgment[11]. Defendant cites a single case from Third Circuit Courts, *Brewer v. U.S. Fire Ins. Co.*, 446 F. Appx. 506 (3rd Cir. 2001), where a Rule 12(b)(6) motion was granted based on a policy exclusion. However, this case is of no moment. In *Brewer* the court did not address or even mention whether a Rule 12(b)(6) motion could be granted based on a policy exclusion. *Brewer*, 446 F. Appx. 506. In fact, a review of the

---

[10] *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.,* 320 F. Supp. 3d 636 (E.D. Pa.2018), *aff'd*, 781 F. Appx. 57 (3rd Cir. 2019); *Nautilus Ins. Co. v. Shawn Owens Inc.*, 316 F. Supp. 3d 873 (E.D. Pa. 2018).

[11] *Certain Underwriters at Lloys of London v. Creagh*, 563 F. Appx. 209 (3rd. Cir. 2014); *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa., Inc.,* 105 F. Supp. 3d 464 (E.D. Pa. 2015); *Alea London Ltd. v. Rudley,* No. Cov. A. 03-CV-1575, 2204 WL 1563002 (E.D. Pa. July 13, 2004); *Mount Pocono Motel Inc. v. Tuscarora Wayne Ins. Co.*, No. 9534 CIVIL 2013, 2014 WL 11351696 (C.C.P. July 8, 2014); *Lambi v. Am. Family Mut. Ins. Co.,* No. 4:11-CV-00906, 2012 WL 2049915 (W.D. Mo. June 6, 2012).

briefing[12] in *Brewer* reveals that this argument was never advanced. *Defendant has not cited a single case from a federal court within the Third Circuit where the court addressed and held that a Rule 12(b)(6) motion could be granted based on an exclusion contained within an insurance policy.*

Next, Plaintiff contends that Defendant has failed to satisfy its burden that the virus exclusion applies. Defendant argues that, "[i]t is undisputed that the novel coronavirus (SARS-CoV-2), sometimes referred to as COVID-19, is a virus." Deft. Br. at pg. 7. Defendant points to various paragraphs of Plaintiff's FAC to demonstrate that Plaintiff concedes that COVID-19 is a virus. However, a careful review of Plaintiff's FAC reveals that Plaintiff has not admitted or conceded that COVID-19 is a virus. Likewise, Defendant has not requested that the Court take Judicial Notice of this. *See* Fed.R.E. 201. While Plaintiff is aware of wide-spread media reports stating that COVID-19 is a virus, Plaintiff is unaware of any court that has considered the admissibility of the scientific evidence supporting such reports. As such, at a minimum, Plaintiff is entitled to a hearing on same. Fed.R.E. 201(d). It has been noted that, "[t]he more critical an issue is to a case, the more reluctant courts should be to determine it by taking judicial notice." *Trans World Airlines, Inc. v. Hughes*, 308

---

[12] *See* Exhibit "F."

F.Supp. 679, 684 (S.D.N.Y. 1969), *supplemented,* 312 F.Supp. 478 (S.D.N.Y. 1970), and *aff'd as modified,* 449 F.2d 51 (2d Cir. 1971), *rev'd sub nom. Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Here, this could be dispositive. As such, it would not be proper for the Court to take judicial notice of same.

Accordingly, Plaintiff submits that Defendant's Motion to Dismiss should be denied.

### ii. The Virus Exclusion does not exclude direct physical losses resulting from viruses.

Plaintiff contends that the virus exclusion is not applicable because the exclusion does not apply to damages resulting from viruses. Alternatively, Plaintiff contends that the virus exclusion is ambiguous, and discovery is needed to ascertain the intent of the exclusion.

The Business Income clause of the policy provides coverage for "the actual loss of Business Income you sustain . . . ., caused by or resulting from a Covered Cause of Loss." *See* Doc. 10-2 at pg. 38 of 179. While the Civil Authority clause provides coverage when losses are, "the direct result of a Covered Cause of Loss." *Id.* at pg. 39 of 179. However, the virus exclusion only excludes losses "caused directly or indirectly by" a virus. *Id.* at pg. 124

of 179.   Thus, the Policy provides Business Income and Civil
Authority coverage for losses resulting from a virus.

This distinction is notable because of the differing language
used in other exclusions. The Perils Specifically Excepted
endorsement provides, "we do not cover or insure against loss or
damaged directly or indirectly caused by, resulting from,
contributed to or aggravated by, or which would not have occurred
but for either of these perils: . . . ". *See* Doc. 10-2 pg. 133 of
179.   The exclusion for nuclear energy liability provides, "this
insurance does not apply to any injury or damage . . . resulting
from . . . "  *See* Doc. 10-2 at pg. 136 of 179.  The exclusion for
fungi bacteria and viruses applicable to the liability portion of
the Policy provides, "this insurance does not apply to injury or
damage arising out of or related to the presence of . . ." *See*
Doc. 10-2 at pg. 138 of 179.

As such, Defendant could have excluded damages and losses
resulting from or caused by a virus, as it did elsewhere in the
policy, but it elected to only exclude damages caused by a virus.
Here, Plaintiff alleged in its FAC that its damages were a result
of the government orders. *See* FAC ¶¶ 23, 25-26 ("As a result . .
TAQ suffered a direct physical loss. . . As a result. . .TAQ was
required to suspend its operations . . . As a result . . . access

to TAQ's dining room was prohibited.).  Thus, Plaintiff's losses and damages, as pleaded, are not excluded by the virus exclusion.

Next, "several arguably ambiguous aspects of the Policy make determination of coverage inappropriate at this stage." *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, LTD.*, No. 6:20-cv-1174 (M.D. Fl. Sep. 24, 2020, Order denying motion to dismiss)[13].  The language of the subject exclusion implies that it was intended to only exclude coverage when "fungi", wet rot, dry rot, bacteria, and virus are physically present at the property.  Extending the exclusion to apply to all damages and loses that were in any way caused, directly or indirectly, by the presence of a virus anywhere in the world conceivably preclude all coverage.

One court has already held that the Virus Exclusion relied on by Defendant[14] is ambiguous as it relates to COVID-19 coverage claims.  *Urogynecology Specialist*, No. 6:20-cv-1174, at *6.  The *Urogynecology Specialist* Court explained:

> Notably, the Policy provided does not exist as an independent document. For example, the "Limited Fungi, Bacteria or Virus Coverage" section of the Policy (Doc. 5-1 at 141) starts by stating that it modifies certain coverage forms. Those forms are not provided in the Policy itself, nor were they provided to the

---

[13] *See* Exhibit "G."
[14] The Virus Exclusion at issue in *Urogynecology Specialist* are both contained on form SS 40 93 07 05.

Court. Additionally, the second paragraph
states that the virus exclusion "is added to
paragraph B.1 Exclusions of the Standard
Plaintiff, therefore, submits that Defendant's
motion should be denied. Property Form and the
Special Property Coverage Form" which was
similarly not provided to the Court. Without
the corresponding forms which are modified by
the exclusions, this Court will not make a
decision on the merits of the plain language of
the Policy to determine whether Plaintiff's
losses were covered. Additionally, it is not
clear that the plain language of the policy
unambiguously and necessarily excludes
Plaintiff's losses. The virus exclusion states
that Sentinel will not pay for loss or damage
caused directly or indirectly by the presence,
growth, proliferation, spread, or any activity
of "fungi, wet rot, dry rot, bacteria or virus."
(Id.). Denying coverage for losses stemming
from COVID-19, however, does not logically
align with the grouping of the virus exclusion
with other pollutants such that the Policy
necessarily anticipated and intended to deny
coverage for these kinds of business losses.

*Id.* For the same reasons, this Court should hold that the Virus

Exclusion is ambiguous and deny Defendant's motion to dismiss.

### iii. Factual issues relating to Plaintiff's regulatory estoppel claim require denial of Defendant's motion to dismiss.

The Pennsylvania Supreme Court has adopted the doctrine of

regulatory estoppel, a form of judicial estoppel. *Sunbean Corp.*

*v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001). The

Court explained, "[j]udicial estoppel is an equitable, judicially-

created doctrine designed to protect the integrity of the courts

by preventing litigants from "playing fast and loose" with the

judicial system by adopting whatever position suits the

moment. Unlike collateral estoppel or res judicata, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals. In essence, the doctrine prohibits parties from switching legal positions to suit their own ends. Thus, having represented to the insurance department, a regulatory agency, that the new language in the 1970 policies—"sudden and accidental"—did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders." *Id.* (internal citations omitted). The Court went on to hold that, "even without pleading or proving reliance by the insurance department" a claim for regulatory estoppel should not be dismissed. *Id.* Further contrary to Defendant's assertion in Pennsylvania, "a plaintiff must set forth two elements to prove regulatory estoppel: (1) A party made a statement to a regulatory agency; and (2) Afterward, the party took a position opposite to the one presented to the regulatory agency. Additionally, at trial, a plaintiff may need to show that the party taking an opposite position possessed some requisite level of culpability." *Simon Wrecking Co. Inc. v. AIU, Ins. Co.*, 541 F.Supp.2d 714, 716 (E.D. Pa. 2008).

Here, the FAC alleges that, "[i]n order to gain initial regulatory approval for the Virus Exclusion, the Insurance Services, Office, Inc., on behalf of insurers represented that,

'property policies have not been a source of recovery for losses involving contamination by disease-causing agents." Pl. FAC. ¶ 43. This averment satisfies the first element for regulatory estoppel. Defendant argues that Plaintiff alleges that The Insurance Services Office, Inc. ("ISO") made the representation not Defendant, therefore, Plaintiff has not alleged that Defendant made a misrepresentation. However, Plaintiff alleged that ISO was making such representation on behalf of Defendant. Thus, the relationship between ISO and Defendant and whether ISO was acting on Defendant's behalf are questions of fact that may not be resolved on a Rule 12(b)(6) motion.

The FAC further alleges that the statements were false at the time they were made. Pl. FAC ¶¶ 44-45. A logical reading of the FAC indicated that Defendant is now asserting a contrary position, i.e., through the denial of coverage. This is very similar to *Sunbeam*. 781 A.2d 1189. Just as in *Sunbeam,* Twin City represented that the virus exclusion did not represent a significant decrease in coverage, when in reality it did. Now Twin City, through the virus exclusion, is adopting the position that coverage was significantly decreased by the virus exclusion. Thus, Plaintiff has pled facts, which if proven, would establish the second element for regulatory estoppel.

Finally, Defendant argues that the subject virus exclusion is contained on "[f]orm SS 40 93 07 05, with "07 05" representing the month and year of a form's edition, here, July 2005." Deft. Br. at pg. 16. According to Defendant, Plaintiff's FAC references statements made in 2006, therefore, it must be dismissed. This argument fails because it assumes matters beyond the pleadings and documents referenced in the pleadings. First, there is nothing in the FAC or referenced documents that indicates or shows that 07 05 stands for July 2005. This is a factual matter that would need to be established through discovery. Likewise, neither the FAC or the referenced documents specify or establish a date when the alleged representations were made. Defendant simply assumes that same were made in 2006 – Plaintiff submits that factual discovery is needed on this issue specifically as to the drafting history, submissions to state regulators, and prior claims settled that involved losses caused by viruses. *See e.g. Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 409 (2016)(relying on statements contained in Insurance Services Offices, Inc. ("ISO") Circulars to ascertain policy intent); *Maryland Casualty Co. v. Reeder*, 221 Cal. App. 3d 961, 968 (1990)("We also note that in drafting its policy and endorsement Maryland utilized standard form provisions prepared by the Insurance Services Organization (ISO). In addition to drafting standard form provisions, the ISO publishes circulars which

describe the intent and effect of its standard provisions. As we shall explain in greater detail below, the ISO's standard provisions are also the subject of interpretation and comment by other insurance industry organizations and publications. The presence of the standard provisions in the Maryland policy and the concomitant availability of interpretative literature is of considerable assistance in determining precisely what risks the Maryland policies cover.").

Plaintiff, therefore, contends that its complaint is not subject to dismissal based on the virus exclusion.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss should be denied.

**MATTLEMAN, WEINROTH & MILLER**
*Attorneys for Plaintiff,*
*Taq Willow Grove, LLC*

*/s/ Robert W. Williams*

Dated: October 1, 2020      By: **ROBERT W. WILLIAMS, ESQUIRE**
Attorney I.D. No.: 315501
401 Rt. 70 East, Suite 100
Cherry Hill, NJ 08034
(856) 429-5507
rwilliams@mwm-law.com