# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREG PROSMUSHKIN, P.C.; | : | |
| GREG PROSMUSHKIN; and, | | |
| IRINA PROSMUSHKIN | | CIVIL ACTION |
| *Plaintiffs*, | : | NO. 20-2561 |
| v. | | |
| THE HANOVER INSURANCE GROUP | : | |
| *Defendant*. | | |

## MEMORANDUM

**JONES, II  J.**                                                        **August 14, 2020**

### I. Introduction

Plaintiffs commenced this Declaratory Judgment action in the Philadelphia Court of Common Pleas on May 6, 2020, seeking a determination that Defendant Hanover Insurance Group[1] is responsible under an insurance policy entered into by Plaintiffs and Defendant on January 20, 2020, for losses Plaintiffs sustained as a result of the COVID-19 pandemic. On June 1, 2020, Defendant removed the action to federal court under 28 U.S.C. § 1441. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over the controversy because the parties are diverse. Plaintiff filed the instant Motion on June 11, 2020, seeking remand to the Philadelphia Court of Common Pleas pursuant to the discretion afforded to this court by the Declaratory Judgment Act, 28 U.S.C. § 2201(a). For the reasons set forth below, Plaintiffs' Motion shall be granted.

---

[1] Hanover Insurance Company and Citizens Insurance Company of America are incorrectly identified as "The Hanover Insurance Group" in the Complaint and are referred to here as such for convenience.

## II. Factual Background

### A. The Parties and the Policy

Plaintiff Greg Prosmushkin, P.C. is a law firm with offices located in Philadelphia, Pennsylvania (Mot. Remand Ex. A ¶ 1, ECF No. 5-4.) Plaintiffs Greg Prosmushkin and Irina Prosmushkin are co-owners of the law firm. (Mot. Remand Ex. A ¶ 2, ECF No. 5-4.) Defendant Hanover is an insurer with a principal place of business in Massachusetts. (Mot. Remand Ex. A ¶ 3.) On or about January 20, 2020, Plaintiffs and Defendant entered into an insurance contract effective through January 20, 2021. (Def. Countercl. ¶ 17, ECF No. 4.) The policy provides coverage for, among other things, "Business Income Losses" and "Extra Expenses." (Mot. Remand A ¶¶ 4-8.) The policy also contains an exclusion for losses due to viruses or bacteria. (Def. Countercl. ¶ 26, Pls.' Resp. Def. Countercl. ¶ 37.)

### B. The COVID-19 Pandemic and Related Losses

Plaintiffs claim they suffered losses from a reduction in business due to the COVID-19 pandemic, as well as losses from additional expenses incurred from having to disinfect their offices. (Mot. Remand ¶ 1.) Plaintiffs further claim their business was impacted by public health guidelines as well as state and local government orders. (Mot. Remand ¶ 1.)

The CDC has issued various guidelines that limit the number of people in gatherings, with its most strict guidelines recommending against gatherings of 10 or more people. (Mot. Remand Ex. A ¶ 13.) Much is still unknown about the pathogen that causes COVID-19, but scientific evidence suggests the virus can live for up to 28 days on surfaces of objects or materials. (Mot. Remand Ex. A ¶ 14.) As a result of the pandemic, officials at the state level in

Pennsylvania, as well as at the local level in Philadelphia, took a number of steps to attempt to slow the spread of the virus.

On March 6, 2020, Pennsylvania Governor Tom Wolf issued the first governmental acknowledgment of the crisis in Pennsylvania with a Proclamation of Disaster Emergency. (Mot. Remand Ex. A ¶ 16.) Ten days later, Philadelphia Mayor Jim Kenney announced the closure of "non-essential businesses," including law firms such as Plaintiffs', and eventually completely prohibited their operation on March 22, 2020. (Mot. Remand Ex. A ¶¶ 17, 19.) Governor Wolf subsequently ordered "non-life sustaining businesses," such as Plaintiffs' law firm, to close their physical premises. (Mot. Remand Ex. A ¶ 18.) Governor Wolf then issued a stay-at-home order for Philadelphia County (among other Pennsylvania counties) on March 23, 2020, which he extended to the entire state on April 1, 2020. (Mot. Remand Ex. A ¶¶ 20, 21.)

Plaintiffs claim their losses stem from the necessary suspension of their in-person operations due to the orders of Governor Wolf and Mayor Kenney. (Mot. Remand Ex. A ¶¶ 31, 34.) They also claim losses due generally to the COVID-19 Pandemic. (Mot. Remand Ex. A ¶ 31, 34.) Plaintiffs submitted a claim to Defendant on March 30, 2020, for losses beginning on March 17, 2020. (Mot. Remand Ex. A ¶ 32.) On April 1, 2020, Defendant responded to the claim by advising Plaintiffs that no coverage was available for their losses. (Pls.' Resp. Def. Countercl. ¶¶ 15, 16.) Plaintiffs now seek a declaration stating that coverage is available from Defendant to Plaintiff for these losses under the insurance policy.

### III.        Legal Standard

The Declaratory Judgment Act (hereinafter "DJA") states that federal courts "may declare the rights and other legal relations of any interested part seeking such declaration." 28 U.S.C. 2201(a). Declaratory judgment is an appropriate remedy when it will terminate the

controversy giving rise to the proceeding. However, the DJA grants discretion to federal district courts, who have "no compulsion" to exercise their jurisdiction over cases seeking declaratory judgment. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("District courts possess discretion in determining whether and when to entertain an action under the DJA.").

Declaratory judgments are intended to "define the legal rights and obligations of the parties in anticipation of some future conduct" and are not meant to "simply proclaim that one party is liable to another." *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014). The Third Circuit has adopted the "independent claim" test to determine whether an action seeking declaratory relief may be separated from a claim for legal relief. *Rarick v. Federated Serv. Ins. Co.*, 852 F. 3d 223 (3d Cir. 2017). *Rarick* defines an independent claim as one which is "alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id*. at 228. If a Complaint seeking declaratory judgment contains a legal claim that is independent, the district court has a "virtually unflagging obligation" to hear those claims, subject to the presence of "exceptional circumstances." *Id.* at 229 (quoting *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976)).

Where an action seeking declaratory relief does not contain an independent claim seeking legal relief, the discretion of the district court is broader. District courts must weigh a number of factors in deciding whether or not to exercise their jurisdiction over a case seeking declaratory judgment. One such consideration is "practicality and wise judicial administration." *State Auto Ins. Cos. v. Summy*, 234 F. 3d 131, 134 (3d Cir. 2000). Courts must also consider the proper relationship between federal and state courts, the likelihood that a federal court will be able to

4

Exhibit C - 0004

resolve the uncertainty of obligation that gave rise to the controversy, and the public interest in settlement of the uncertainty of obligation, among other factors. *Reifer v. Westport Ins. Corp.*, 751 F. 3d 129, 141 (3d Cir. 2014). Where the action presents novel, unsettled, and/or complex issues of state law, district courts should be particularly reluctant to exercise their jurisdiction. *Id*. "The fact that district courts are limited to predicting, rather than establishing state law requires serious consideration." *Id*. at 148.

### IV.     Discussion

For purposes of the instant Motion, this Court must first determine whether the DJA applies to this action. If it does, the court must then determine whether or not to exercise its jurisdiction pursuant to the DJA. Upon doing so, this Court concludes that the DJA does in fact apply to the present case, and that the court should exercise its discretion under the DJA to remand the matter back to the Philadelphia County Court of Common Pleas.

#### A.     Applicability of the DJA

The DJA states that courts "may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201 (emphasis added). Furthermore, Federal Rule of Civil Procedure 57 states that "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed.R.Civ.P. 57. Defendant claims Plaintiffs' action is in truth seeking legal, rather than declaratory judgment. While Plaintiffs' Complaint contains factual allegations that could potentially amount to breach of contract, Plaintiffs do not bring a parallel breach of contract claim. The Third Circuit warns of legal claims that "masquerade as a declaratory judgment" in order to activate discretionary jurisdiction. *Reifer* at 137. However, Plaintiffs' action is broader than Defendant's April 1, 2020 denial. Rather than alleging Defendant's denial

5

Exhibit C - 0005

Exhibit C - 0006

was a breach of contract, Plaintiffs are seeking a more general declaration regarding their losses under an *ongoing* insurance policy caused by an *ongoing* pandemic. An action seeking declaratory judgment which would necessarily implicate payment by an insurer if the court finds that liability exists, does not automatically convert to a legal claim. *Id*. at 136. To use an example from this case, a legal claim "masquerading" as a declaratory claim would be one where Plaintiffs narrowly seek a declaration as to whether the April 1, 2020 denial by Defendant was proper. This would be a case which would have very obvious and specific damages attached to a declaration in Plaintiffs' favor, and as such, declaratory relief would be indistinguishable from legal relief. However, in this case, a broader declaration is sought by Plaintiffs regarding the rights and obligations of the parties for the entire duration of the insurance policy, as it continues to run simultaneously with the COVID-19 pandemic.

      To further illustrate *Reifer*'s idea of a legal claim masquerading as a declaratory claim, there are some recent decisions from this district in which such was the case. In these cases, the insured brought a claim for declaratory judgment, as well as a claim for breach of contract. These parallel claims were based on the same fact pattern and revolved around a denial of coverage for an incident entirely in the past (in both cases, a vehicle accident). The court noted in *Butta v. GEICO Cas. Co.*, that "courts generally decline granting declaratory relief when the claim for declaratory judgment is *entirely duplicative of another claim in the cause of action*." *Butta*, 400 F. Supp. 3d 225, 233 (E.D. Pa. Sept. 10, 2019) (emphasis added). This was reaffirmed by the court in *LM Gen. Ins. Co. v. Lebrun*, Civil Action No. 19-2144, 2020 U.S. Dist. LEXIS 115436 at *31-32 (E.D. Pa. July 1, 2020). These cases demonstrate that when declaratory claims are redundant with parallel claims for legal relief, the declaratory claims should be dismissed and the court should proceed on the legal claims. However, there is no parallel claim here. Defendant

cannot create a cause of action from the fact pattern on behalf of Plaintiffs in order to avoid application of the DJA, just as Plaintiffs could not add a declaratory claim to a breach of contract action to ensure application of the DJA.

Defendant also relies on *Andela*'s assertion that declaratory judgments are meant to be in anticipation of some future conduct. *Andela*, 569 F. App'x at 83. However, this also does not render the DJA inapplicable to this case. While some past conduct of Defendant is implicated in the Complaint in the form of its April 1, 2020 denial of Plaintiffs' claim, there is present and future conduct that would be impacted by a declaratory judgment in this case as well. The insurance policy is ongoing through January 20, 2021, and the COVID-19 pandemic is, unfortunately, still ongoing. The restrictions mentioned in Plaintiffs' Complaint have certainly been lessened or in some cases lifted completely, but COVID-19 continues to spread nationwide, including Pennsylvania. It is entirely possible that restrictions similar to those in Plaintiffs' Complaint will be reinstated by Pennsylvania and/or the City of Philadelphia while Plaintiffs are still insured by Defendant. Even if they are not, the pandemic and the public health orders certainly continued past Defendant's April 1, 2020 denial of Plaintiffs' claim and past Plaintiffs' May 6, 2020 filing of their Complaint. Furthermore, a declaration that the language of this policy does or does not cover Plaintiffs for their losses from the COVID-19 pandemic could influence both Plaintiffs' and Defendant's decision-making and negotiations for future insurance policies in the event this pandemic continues after the policy expires, or indeed, if we have the misfortune of having to face another pandemic of this magnitude in the future.

Plaintiffs' Complaint references damages from "the presence of COVID-19," and claims losses beginning on March 16, 2020, but does not specify an end date for damages. (Mot. Remand Ex. A ¶¶ 23, 32). Paragraph 34 of the Complaint states Plaintiffs are seeking a

7

Exhibit C - 0007

declaration that "Defendant is obligated to pay Plaintiffs due to… losses… *attributable to the COVID-19 pandemic during the covered policy period*." (Mot. Remand Ex. A ¶ 34) (emphasis added). While some of those losses certainly accrued before this action was filed, it is indisputable that the pandemic continued past Plaintiff's filing on May 6, 2020, that the pandemic is still ongoing, and that the covered policy period is still ongoing.

Plaintiffs' action does not contain a parallel claim for breach of contract. That Plaintiffs *could* seek an action for breach of contract (or make any other plausible claim) does not make declaratory judgment inappropriate, as provided for by the text of the DJA itself. 28 U.S.C. § 2201(a) ("[A]ny court of the United States… may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*.") (emphasis added). Given that the DJA allows for declaratory judgments regardless of whether further action is or could be sought, and that a declaration of rights and legal obligations in this case does implicate some future conduct in addition to past conduct, the DJA is applicable in this case. This Court therefore has discretion over whether to hear this case or remand it to the Philadelphia Court of Common Pleas.

### B. Appropriateness of Exercising Discretion

The DJA confers discretion on this Court by providing it "may" declare the rights and other legal relations of parties. 28 U.S.C. § 2201(a). The Supreme Court confirms this discretion exists in *Brillhart* and *Wilton*.[2] In the Third Circuit, cases seeking declaratory judgment fall into two categories: those with independent legal claims and those without. *Rarick*, 852 F. 3d at 223. Those cases which contain independent legal claims, carry a "virtually unflagging obligation" for district courts to exercise their jurisdiction. *Id*. at 229. Declaratory judgment actions without

---

[2] *See supra* §III.

independent legal claims attached confer broader discretion on district courts in deciding whether to exercise their jurisdiction under the DJA. *Id.*

While Plaintiffs' Complaint does not contain a claim for legal relief, Defendant argues said Complaint alleges all of the elements for breach of contract, thereby creating a *de facto* independent claim. (Def. Resp. Br. 5.) Granting this premise for just a moment, a quick analysis under the "independent claims" test reveals that a decision to remand this case would nevertheless be appropriate. While *Rarick* notes a "virtually unflagging obligation" for district courts to hear declaratory judgment cases containing independent claims for legal relief, the Third Circuit notes the obligation is subject to an "exceptional circumstances" analysis. *Rarick* at 229. The "exceptional circumstances" test is derived from *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 814 (1976). *Colorado. River* provides that exceptional circumstances exist where "the order to the parties to [remand] to the state court would clearly serve an important countervailing interest." *Id*. *Colorado River* further notes that remand to state court is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar." *Id*.

This Court must therefore weigh the public policy interest of remanding the present case to state court, against the interests of Defendant to be heard in a federal forum. The Third Circuit itself notes that "the desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Summy*, 234 F. 3d at 136. The novel, complex, and unsettled state law issues implicated in this case are of obvious gravity, weighing heavily towards remand. Combined with the relatively weak interest of Defendant to be heard on this state law claim in a federal forum, under the "independent

claim" test, it is appropriate—and indeed necessary—for this Court to remand this action to Pennsylvania state court.

Of course, the independent claims test is not even implicated here, despite Defendant's arguments to the contrary. Plaintiffs have not brought a claim for any legal relief, and as such, this Court is not bound to the independent claims test. The court's discretion in deciding whether to hear this case or remand it to state court is therefore broader.

*Reifer* issues clear guidance on exercising jurisdiction over declaratory cases that do not contain independent claims. Specifically, *Reifer* states that "the proper relationship between state and federal courts requires district courts to step back" to allow state courts to settle their own unsettled law. *Reifer*, 751 F. 3d at 141. This Court must also consider the likelihood that it can resolve the uncertainty of obligation at issue here, as well as the public's interest in the settlement of the uncertainty of obligation.[3] *Id*. In diversity cases such as this, federal courts must apply state law. Where the state law issue(s) being presented are novel, federal courts are tasked with having to predict how state courts would decide the issue(s). Given the novelty of the state law issue of insurance coverage for losses resulting from the COVID-19 pandemic, the Pennsylvania state courts are clearly better equipped to settle the uncertainty of obligation, and it is in the public's interest for them to do so. As such, this Court must therefore step back and allow Pennsylvania state courts to resolve the uncertainty. While federal courts are sometimes compelled to predict state law, it is often by reason of original jurisdiction and a lack of discretion to remand. Here, this Court does have a choice to decline to predict as-of-yet

---

[3] There are other *Reifer* factors, including the convenience of the parties, the availability and relative convenience of other remedies, and a policy of restraint when the same issues are pending in state court. *Reifer*, 751 F. 3d at 140. Assessment of these factors reveals that they push neither in favor of nor against exercising discretion.

unestablished state law and instead allow Pennsylvania to establish that law for itself. As to *Reifer*'s concern regarding public interest, there is a clear and strong public interest that the uncertainty of obligation in this case be resolved. Insurance liability related to the COVID-19 pandemic is likely to be the subject of a significant number of cases in Pennsylvania state court. Furthermore, clarifying whether or not certain language in insurance policies creates coverage for losses due to COVID-19 will impact a significant portion of the population operating businesses of all kinds throughout the Commonwealth.

      In sum, Plaintiffs present no independent claim for legal relief in their Complaint. Assuming *arguendo* they had, the circumstances of the ongoing COVID-19 pandemic may clearly be considered "exceptional" under *Colorado River*, thereby necessitating remand to state court. The issues of state law presented in Plaintiffs' action are novel, complex, and exceedingly important, creating a compelling public policy interest for these claims to be allowed to be decided by Pennsylvania courts. The Supreme Court in *Wilton* advises us to consider "practicality and wise judicial administration" in deciding whether to exercise jurisdiction under the DJA. *Wilton*, 515 U.S. at 288. It is neither practical nor wise for this Court to attempt to predict how Pennsylvania would decide this novel and complex issue of state law when the discretion exists to allow Pennsylvania[4] courts to address the matter for themselves.

---

[4] This Court notes that Defendant brings a counterclaim seeking declaratory judgment on their rights and obligations regarding Plaintiffs' New Jersey office, in addition to their Pennsylvania office. New Jersey was among the hardest-hit states in the nation by COVID-19 and as such, their interest in deciding their own state law on this matter is similarly strong. Defendant's counterclaim will therefore be dismissed without prejudice so that this matter may be brought in state court if either party so chooses.

11

Exhibit C - 0011

**V.      Conclusion**

For the reasons set forth herein, Plaintiffs' Motion to Remand this action to the Philadelphia Court of Common Pleas shall be granted.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II   J.