Exhibit E - 0001

Eric L. Harrison - ID #033381993
METHFESSEL & WERBEL, ESQS.
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
harrison@methwerb.com
Attorneys for Franklin Mutual Insurance Company
Our File No. 89286 ELH

|  |  |
|---|---|
| OPTICAL SERVICES USA/JCI,<br>OPTICAL SERVICES USA, LLC,<br>OPTICAL SERVICES USA-WO, RE &<br>LE HOLDING LLC, STONG OD EWING<br>NJ, LLC<br><br>      Plaintiffs,<br>V.<br><br>FRANKLIN MUTUAL INSURANCE<br>COMPANY<br><br>      Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br>DOCKET NO.: BER-L-3681-20<br><br>    Civil Action<br><br><br>**ORDER** |

**THIS MATTER** having been brought before the Court by way of Motion of Methfessel & Werbel, attorneys for defendant(s), Franklin Mutual Insurance Company, seeking an Order for Dismissal, and the Court having reviewed the moving papers, any opposition thereto, oral argument having been heard, and for other good cause having been shown;

**IT IS** on this **13th day** of **August, 2020;**

**ORDERED** ~~that plaintiff's Complaint and any and all Crossclaims be and is hereby dismissed~~ **DENIED\*;** and it is further

Exhibit E - 0001

Exhibit E - 0002

**ORDERED** that the Court provides a copy of this Order to all counsel of record on this date via eCourts Civil. Movant is directed to serve a copy of this Order within seven (7) days of the date hereof on all parties not served electronically via regular and certified mail return receipt requested.

_____
Hon. Michael N. Beukas, J.S.C.

OPPOSED

\*  **The Motion is denied for the reasons stated at length on the record.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CIVIL PART
BERGEN COUNTY
(HEARD VIA ZOOM)
DOCKET NO: BER-L-3681-20
A.D. #_____

OPTICAL SERVICES USA/ )
JC1, OPTICAL SERVICES )
USA, LLC, OPTICAL )               TRANSCRIPT
SERVICES USA-WO, RE & LE )
HOLDINGS, LLC, STONG OD )              OF
EWING NJ, LLC, )
                              )               MOTION
        Plaintiffs, )
                              )
        vs. )
                              )
FRANKLIN MUTUAL )
INSURANCE COMPANY, )
                              )
        Defendant. )

                    Place: Bergen County Justice Center
                           10 Main Street
                           Hackensack, New Jersey 07601

                    Date: August 13, 2020

BEFORE:

    HONORABLE MICHAEL N. BEUKAS, J.S.C.

TRANSCRIPT ORDERED BY:

    AMINA RANA, (Paul Weiss Rifkind Wharton Garrison)

APPEARANCES:

    SEAN E. ROSE, ESQ. (Olender Feldman, LLP)
    Attorney for Plaintiffs

    ERIC L. HARRISON, ESQ. (Methfessel & Werbel)
    Attorney for Defendant

                    Transcriber: Laura Scicutella
                    Phoenix Transcription, LLC
                    796 Macopin Rd.
                    West Milford, NJ   07480
                    (862)248-0670

                    Audio Recorded
                    Recording Opr: Alexa D'Angelo

Exhibit E - 0004

2

I N D E X

|                                    | PAGE      |
|------------------------------------|-----------|
| Colloquy re: Housekeeping          | 3,7,30    |
| ARGUMENTS:                         |           |
| BY: Mr. Harrison                   | 5,7,15    |
| BY: Mr. Rose                       | 13        |
| THE COURT:                         |           |
| Decision                           | 18        |

1          (Proceeding commenced at 9:30:49 a.m.)

2          THE COURT:  Superior Court of the State of

3     New Jersey, Bergen County Vicinage, clerk recording,

4     Alexa D'Angelo law clerk, docket number BER-L-3681-20,

5     caption is Optical Services USA/JCI (sic), Optical

6     Services USA, LLC, Optical Services USA-WO, and Re and

7     Le Holdings, LLC, Stong OD Ewing NJ, LLC versus

8     Franklin Mutual Insurance Company.  Judge Michael N.

9     Beukas, chambers 453.  The time is approximately 9:32

10     a.m.  May I have the appearances of counsel for the

11     record, please, starting with the plaintiff?

12          MR. ROSE:  Good morning, Your Honor.  Sean

13     Rose from the law firm of Olender Feldman on behalf of

14     plaintiff, Optical Services USA/JC1, Optical Services

15     USA, LLC, Optical Services USA-WO, Re and Le Holdings,

16     LLC, and Stong OD Ewing NJ, LLC, collectively

17     plaintiffs, Your Honor.

18          THE COURT:  Good morning, Counsel.

19          MR. ROSE:  Good morning.

20          MR. HARRISON:  Good morning, Judge.  Eric

21     Harrison, Methfessel and Werbel, on behalf of Franklin

22     Mutual Insurance Company.

23          THE COURT:  Good morning, Counsel.  Okay,

24     gentlemen, just a -- a couple of --

25          RECORDING:  (Indiscernible) --

4

1          THE COURT:  -- reminders before we --

2          RECORDING:  -- is now in the conference.

3          MR. HARRISON:  Your Honor, this is Eric

4     Harrison speaking.  As a courtesy, I should let the

5     Court know I do have a few folks dialing in.  They've

6     all been instructed to keep their phones on mute.

7     Various FMI representatives and a colleague of mine

8     will be listening in but will not be participating.

9          THE COURT:  Okay, very good.

10         For purposes of our established record here

11    today, gentlemen, when you do speak at oral argument, I

12    do need you to identify yourself in between oral

13    arguments so that the transcription service can clearly

14    identify which attorney is speaking.

15         When you are referencing an oral argument to

16    any specific controlling case, I need you to identify

17    that case for the record and pursuant to Rule 1:36-3, I

18    need you to identify for the record whether that is a

19    published opinion in the State of New Jersey versus an

20    unpublished opinion and whether or not you are citing

21    to any law of any other jurisdiction including the US

22    Supreme Court so that I can identify for the record as

23    to whether or not any of the law is controlling in this

24    case for purposes of oral argument.

25         In addition, we are on a Polycom speaker

```
 1    today and at times it may be difficult for you to hear

 2    me and I may need to interject to pose a question to

 3    either attorney so I may have to elevate my voice so

 4    that you can hear me clearly.  So please don't

 5    misconstrue me elevating my --

 6              RECORDING:  (Indiscernible) --

 7              THE COURT:  -- voice --

 8              RECORDING:  -- is now in the conference.

 9              THE COURT:  Okay, gentlemen, I -- if I need

10    to elevate my voice, it's for purposes of the Polycom

11    picking up my voice so that you can hear it, okay.

12              So I have before me a Motion to Dismiss the

13    Complaint for failure to state a claim upon which

14    relief can be granted pursuant to Rule 4:6-2(e) filed

15    by the defendant, Franklin Mutual Insurance Company.

16    So, Mr. Harrison, this is your Motion.  You may

17    proceed.

18              MR. HARRISON:  Yes, sir.  Thank you, Your

19    Honor.  We are all aware, I know plaintiffs' counsel is

20    aware, certainly my firm as an insurance defense firm

21    is well aware of the fast-moving nature of developments

22    in insurance litigation and other litigation over

23    Covid-19.  Two significant events happened yesterday

24    and they're both worthy of mention.  The first is, and

25    this is not within the record, but the Court -- it's
```

 1    not important to the Court's decision on the policy

 2    language, but it's -- it's significant background.  The

 3    multi-district litigation panel of the United States

 4    District Court denied a nation-wide Motion to

 5    Consolidate these business interruption litigations

 6    that are venued in various Federal Courts around the

 7    country essentially on the basis that the policy

 8    language differs from policy to policy.  Even though a

 9    lot of insurers use (indiscernible) income and would

10    other insurers, there is still significant differences

11    between those forms and the facts of particular cases

12    also can determine whether there would be coverage and

13    to what extent.

14          The second significant thing to happen

15    yesterday was the issuance of the decision that Mr.

16    Rose brought to the Court's attention, and I don't have

17    any objection to his filing it yesterday because it

18    didn't come out until yesterday and I have had ample

19    time to review it.  It's the Studio 417 case from U.S.

20    District Court, Western District of Missouri, Southern

21    Division.  This opinion, which I'm not going to

22    significantly disagree with, demonstrates the wisdom of

23    the MDO panel in refusing to consolidate because the

24    denial of the Motion to Dismiss based on the

25    allegations in that complaint bespeaks the importance

7

1    of policy language differing from policy to policy and

2    alleged facts differing from complaint to complaint.

3              I should ask as a courtesy whether the Court

4    has any objection to me talking about this case that

5    Mr. Rose sent yesterday.

6              THE COURT:  What I would like you to do,

7    Counsel, is argue your Motion to Dismiss.  This Court

8    is bound by the implications of Rule 1:36-3.  While the

9    parties felt compelled to cite to numerous other

10   jurisdictions with respect to their arguments, their

11   respective arguments both on the Motion and in the

12   Opposition, this Court is bound by legal precedent

13   within the State of New Jersey, namely the Appellate

14   Division, and the New Jersey Supreme Court.  With

15   respect to the US Supreme Court, this -- this Court

16   also takes precedent from the US Supreme Court for

17   controlling decisions.  So this Court will give

18   whatever weight is necessary to whatever arguments

19   reflect in the controlling legal precedent set forth in

20   this state as opposed to other states.  So you may

21   proceed with the argument.

22             MR. HARRISON:  Okay, thank you, Your Honor.

23   I just -- I just wanted to make sure that the Court

24   didn't want me to completely disregard this decision.

25   But I'm going to highlight it simply to contrast it

1    with a case we're looking at in order to argue my

2    position under New Jersey law.

3           The Studio 417 decision describes a policy

4    which defines a covered cause of loss, and that's at

5    page 2 of the opinion, as follows, "Accidental direct

6    physical loss or accidental direct physical damage."

7    It goes on to say on the same page, "The policies do

8    not include and are not subject to any exclusion for

9    losses caused by viruses or communicable diseases."

10          Now, I want to be clear about something.  I

11   want to be clear about a point of agreement that

12   Franklin Mutual has with the plaintiffs in this case.

13   At paragraph 36 of the Complaint filed in this case,

14   plaintiffs recite as follows, "There is no known

15   instance of Covid-19 transmission or contamination

16   within the premises of plaintiffs' businesses."  Now,

17   the declamation of coverage letter that FMI issued

18   prior to the Complaint being filed in this case because

19   the Complaint challenges that declamation of coverage

20   find it among relevant policy provisions the exclusion

21   of 12(c) for contamination by any virus, et cetera.

22   Because the complaint expressly asserts that there was

23   no contamination and because it is our universal duty

24   to read as accurate all facts alleged in the complaint

25   and I agree that the contamination exclusion would not

1    apply to this case.  If the complaint had alleged that

2    there was contamination on the premises, then there

3    probably would be direct physical loss, but there would

4    also be exclusion of coverage under that virus

5    exclusion.  So what we're really focused on is the

6    policy language.  In Studio 417, the definition of loss

7    there was physical loss or physical damage.

8            THE COURT:  Okay, but we're concerned about

9    New Jersey.  We're not concerned about the Western

10   District of Missouri; correct?

11           MR. HARRISON:  That is true, Your Honor, but

12   we are concerned about policy language defining direct

13   physical loss, --

14           THE COURT:  Okay, but the --

15           MR. HARRISON:  -- but I'm -- I'm happy to

16   take it --

17           THE COURT:  -- definition (indiscernible) --

18           MR. HARRISON:  -- to our policy language.

19           THE COURT:  -- definition has not been

20   established by any court in this state with the

21   exception of the Wakefern case; correct?

22           MR. HARRISON:  I think that is absolutely

23   correct.

24           THE COURT:  Okay, I just want to establish

25   that for purposes of the record.

1          MR. HARRISON:  Okay, so back to our policy.

2     The business interruption loss that -- of which

3     plaintiffs seek to avail themselves governs loss of

4     income resulting from direct covered loss.  We go to

5     page 9 of the policy form which expressly defines

6     direct covered loss as follows, "The fortuitous direct

7     physical loss as described in Part 1(c), General Cause

8     of Lost Conditions, Coverages A, B, C, which occurs at

9     described premises occupied by you."  Now, the

10    definition is (indiscernible) if it didn't refer -- if

11    it didn't cross-reference another definition, then we'd

12    be fighting over whether the closure of a business

13    because of a risk of virus spread would constitute a

14    fortuitous direct physical loss.

15          However, because it cross-references the

16    description of direct covered loss that's also in the

17    policy at page 8.  We go to the more detailed

18    definition.  Covered loss, "Means fortuitous direct

19    physical damage to or destruction of covered property

20    by a covered cause of loss."  The requirement of direct

21    physical damage to or destruction of (indiscernible) --

22          RECORDING:  (Indiscernible).

23          MR. HARRISON:  -- requirement of direct

24    physical damage to or destruction of covered property

25    distinguishes this case from the Studio 417 case in

11

1     that there is the physical damage or destruction

2     requirement that was absent in that case which also had

3     --

4          RECORDING:  (Indiscernible) is now in the

5     conference.

6          MR. HARRISON:  -- I apologize -- which also

7     had the open-ended concept of loss which was not

8     defined.  Our policy defines loss as requiring that

9     physical impact.

10         The Court has reviewed Wakefern I know and

11    the -- the cases -- the New Jersey cases discussed in

12    our brief I agree that there is no case directly on

13    point construing the -- this precise policy language in

14    the context a claim where there was a closure of a

15    business because of the risk of contamination by a

16    virus.  But I think that the application of loss that's

17    set forth in New Jersey and in the other jurisdictions

18    we've cited as persuasive, although not binding,

19    compels the conclusion that this did not meet the

20    policy definition of direct covered loss to satisfy

21    coverage.

22         THE COURT:  Counsel, let me pose -- let me

23    pose one question to you.  Why didn't the policy then

24    have specific exclusions for an event such as this?

25    Meaning for virus proliferation.

Exhibit E - 0014

12

1          MR. HARRISON:  Well, it -- it precisely has

2     an exclusion for virus proliferation.  It does not have

3     an exclusion for a closure of business based on the

4     risk of virus proliferation.  I can't speak to the

5     drafters of the policy other than to say this is an

6     unprecedented event.  First in my lifetime.  First in

7     my parents and our parents.  So, yeah, in -- in an

8     ideal world all potential cataclysmic risks could be

9     underwritten and determined in advance as to what we're

10    going to cover and to what extent or whether there

11    should be any coverage at all, but before we get to the

12    absence of an exclusion, and I agree there is no

13    exclusion that would apply on the facts as alleged in

14    this Complaint, we have to satisfy the coverage

15    definition first.

16          THE COURT:  You can proceed, Counsel.  Thank

17    you.

18          MR. HARRISON:  I -- Your Honor, to -- to be

19    candid, I know you've reviewed the papers.  I'm happy

20    to address any further questions the Court may have or

21    simply reserve an opportunity to respond to my

22    colleague.  I -- I think between our papers and what

23    I've had to say this morning that I've stated our case.

24          THE COURT:  Thank you, Counsel.  Okay, Mr.

25    Rose, your response?

Exhibit E - 0015

13

1          MR. ROSE:  Thank you, Your Honor.  And just

2     to try to make sure that there's a clean record

3     virtually, this is again Sean Rose, Olender Feldman, on

4     behalf of plaintiff.

5          So contrary to the insurance industry's well

6     rehearsed talking points and -- and Mr. Harrison has a

7     very good brief and very good argument, the simple fact

8     is that plaintiff and the many other in the -- and

9     (indiscernible) plaintiffs purchased business owners

10     policies to insure against, among other things,

11     unexpected business interruptions.  And what happened

12     back in March, as we all know because we all lived

13     through it, that's about as unexpected as you get.

14     Plaintiffs were forced to close their businesses

15     because the executive order issued by the State --

16     well, the State pertinent to here, but issued across

17     the country in emergency response to the pandemic found

18     that there is a dangerous condition on plaintiffs'

19     property.  As a result of those orders, the plaintiffs

20     closed.  All residents were told to stay at home and

21     (indiscernible) claims (indiscernible).

22          Now, as Mr. Harrison pointed out, the

23     briefing reflects that there are really two main points

24     of argument that -- that I'll hit quickly because they

25     are recited at length in the brief is the first

14

1    (indiscernible) on the direct physical loss issue.  We

2    know from, and just to again bide by Your Honor's

3    directive, we know that under the <u>Gregory Packaging,</u>

4    <u>Inc. versus Travelers Property Casualty Company of</u>

5    <u>America</u> case, which is an unpublished case, but from

6    the District of New Jersey and cited in both Mr.

7    Harrison's and our brief, we know that a dangerous

8    condition on the property can constitute a physical

9    loss.  Now, here, we have an executive order that found

10   that plaintiffs' businesses were deemed unfit and

11   unsafe because of a dangerous condition.  Plaintiffs'

12   loss of income caused by the closure orders concluding

13   that there was a dangerous condition on the property is

14   a direct physical loss.  Alternatively, if we wanted to

15   get into the legal standard, at a minimum, it is

16   plausible the plaintiffs have alleged a direct physical

17   loss here which should defeat a (indiscernible) Motion

18   and allow plaintiffs to pursue discovery, among other

19   things, to discern the true intent behind policy terms

20   which, in some cases, points to coverage but in other

21   cases it may be ambiguous.

22       The second point would be the civil authority

23   coverage and I -- I think here, the Western District of

24   Missouri case has instructed, and I'll get to that in a

25   second, here we -- we, again, we know what happened.

1   We all lived through it.  The closure orders forced

2   plaintiffs to close and banned occupancy of all non-

3   essential businesses.  In doing so, the closure orders

4   necessarily not only affected plaintiffs' businesses,

5   but they affected all -- all properties around

6   plaintiffs.  It was a stay-at-home order.  Unless it

7   was an essential business, everything was closed.  It's

8   alleged -- it -- it's in the Motion and, you know,

9   beyond that, Your Honor, we all lived through it.  We

10  were all there.  So, again, at a minimum, it is

11  plausible that plaintiffs are entitled to

12  (indiscernible) coverage here.  And unless Your Honor

13  has any questions, I know the briefing was fairly

14  detailed.

15          THE COURT:  Thank you, Mr. Rose.  You know,

16  at the outset, gentlemen, I do commend the both of you

17  with respect to a very, very difficult topic and

18  concept in the State of New Jersey with regard to the

19  interpretation of insurance law.  I did find that the

20  respective briefs were very well drafted.

21          Mr. Harrison, do you have a reply at this

22  point?

23          MR. HARRISON:  Briefly, Your Honor, yes.  Mr.

24  Rose says the executive order for -- forced closure

25  based on a finding that there was a dangerous condition

16

1    on plaintiffs' property.  That's -- that's simply not

2    the case.  The -- the Complaint does not allege that.

3    I understand what he's saying.  It -- it's a -- it's a

4    directive closing down non-essential businesses based

5    on the risk that putting people in proximity to each

6    other indoors could result in transmission of the

7    virus, could -- it could result in the virus sitting on

8    a piece of equipment in one of the plaintiffs'

9    examining rooms, but the Complaint in this case

10   expressly alleges that there has been no known instance

11   of Covid-19 transmission or contamination.

12           I -- I get it that this is business

13   interruption insurance and to quote one of the judges I

14   appeared before in my first year arguing coverage

15   motion, he said, Mr. Harrison, before we turn to the

16   policy terms, everybody knows that when an insured buys

17   insurance for something, their reasonable expectation

18   is that they're going to be covered for whatever might

19   befall them, but then we got to go to the policy

20   language and if indeed coverage was determined by the

21   name of the coverage, business interruption, well, then

22   the insurance industry loses and FMI loses this case

23   because we're not disputing that there was business

24   interruption.  Although if we were to have to dig

25   deeper, we would probably have a dispute over whether

17

1    plaintiffs were non-essential businesses, but that's

2    not what this Motion is about.  The law requires that

3    we look carefully at the policy language.  And with

4    reference to <u>Gregory Packaging</u>, we're talking about the

5    release of ammonia into the air, talking about

6    something physically occurring and I think it's -- it's

7    clear from the plain policy language and the meaning of

8    the terms, which are precisely defined in the policy,

9    that in this instance under this policy based on these

10   allegations there is no direct covered loss.

11        In -- in asking for discovery to determine

12   the true intent behind policy terms, right, that's

13   something you need to speak about briefly.  When policy

14   language is clear, I am not aware of any precedent

15   which would support denial of a Motion to Dismiss on

16   the basis that the plaintiff is entitled to conduct

17   discovery to see what the drafter of the document, who

18   I can tell the Court was not -- is not an employee of

19   FMI, had in mind when defining direct covered loss or

20   covered loss.

21        There -- there is -- in New Jersey we do have

22   a -- a big case called <u>Morton International</u> which has

23   to do with pollution exclusions and that's where our

24   courts created this -- the concept of regulatory

25   estoppel where essentially the insurance industry

18

1    lobbied to insert a particular form of coverage within

2    a policy with an exclusion for -- that applied to

3    environmental losses and essentially the courts found,

4    hey, you came to the Department of Banking and

5    Insurance putting forth this policy language suggesting

6    it would do something and then you went to court and

7    suggested otherwise.  There is no such allegation in

8    this case.  I haven't seen any such allegation even

9    made in the press or -- or by the various

10   (indiscernible) or -- or in any case that's being

11   litigated that I'm aware of.  When the plain policy

12   terms apply plainly and directly to the facts asserted,

13   I'm not aware of any legitimate basis for denying a

14   Motion based on the facts accepted as true in the

15   pleading on the basis that plaintiff wishes to take

16   discovery to see what the defendant meant by policy

17   language that somebody else wrote which the defendant

18   adopted if the plain language controls and is

19   unambiguous and I submit that it does control and it is

20   unambiguous here.

21        THE COURT:  Thank you.  Gentlemen, thank you,

22   very much.  I'm prepared to rule on this Motion.

23        This matter comes before the Court on a

24   Motion Seeking Dismissal of the plaintiffs' Complaint

25   with prejudice pursuant to Rule 4:6-2(e).  The Court

1    begins with a few general observations concerning the

2    standards governing dismissal motions under Rule 4:6-

3    2(e) by citing Flinn v. -- Flinn v. Amboy National

4    Bank, 40 -- 436 N.J.Super. 274 (App. Div. 2014), "In

5    reviewing a complaint dismissed under Rule 4:6-2(e),

6    the inquiry is limited to examining the legal

7    sufficiency of the facts alleged on the face of the

8    complaint," citing Printing Mart-Morristown versus

9    Sharp Electronics Corp., 116 N.J. 739 at page 746

10   (1989) and Rieder versus Department of Transportation,

11   221 N.J.Super. 547 at page 552 (App. Div. 1987).

12        The essential test as set forth in Green

13   versus Morgan Properties, 215 N.J. 431 at page 451

14   (Sup. Ct. 2013) is, "Whether a cause of action is

15   'suggested' by the facts," citing Printing Mart-

16   Morristown versus Sharp Electronics Corp., 116 N.J. at

17   746 quoting Velantzas versus Colgate-Palmolive Co., 109

18   N.J. 189 at page 192 (1988).

19        "A reviewing court searches the complaint in

20   depth and with liberality to ascertain whether the

21   fundamental of a cause of action may be gleaned, even

22   from an obscure statement of claim, opportunity being

23   given to amend if necessary," citing Di Cristofaro

24   versus Laurel Grove Memorial Park, 43 N.J.Super. 244 at

25   page 252 (App. Div. 1957).

1          In the case of Rule 4:6-2(e), Dismissals,

2     "The Court is not concerned with the ability of the

3     plaintiffs to prove the allegation contained in the

4     complaint," citing <u>Somers Construction Co. versus Board</u>

5     <u>of Education</u>, 198 <u>F.Supp.</u> 732, 734 (Dis. NJ. 1961).

6     Instead,

7          "The plaintiffs are entitled to every

8     reasonable inference of fact and the examination of a

9     complaint's allegations of fact required by the

10     aforestated principle should be one that is at once

11     painstaking and undertaken with a generous and

12     hospitable approach,"

13          citing <u>Green versus Morgan Properties</u>, 215

14     <u>N.J.</u> 431 at page 452 quoting <u>Printing Mart-Morristown</u>

15     <u>versus Sharp Electronics Corp.</u>, 116 <u>N.J.</u> at 746.

16          Notwithstanding this indulgent standard, "A

17     pleading should be dismissed if it states no basis for

18     relief and discovery would not provide one," citing

19     <u>Rezem Family Associates, LP versus Borough of</u>

20     <u>Millstone</u>, 423 <u>N.J.Super.</u> 103 at page 113 (App. Div.

21     2011), cert. denied and the appeal was dismissed at 208

22     <u>N.J.</u> 366 (2011).  See also <u>Sickles versus Cabot Corp.</u>

23     379 <u>N.J.Super.</u> 100 at page 106 (App. Div. 2005) cert.

24     denied at 185 <u>N.J.</u> 297 (2005).

25          In those rare instances, as cited in <u>Smith</u>

 1    versus SBC Communications, Inc., 178 N.J. 265 at page

 2    282 (2004), a motion to dismiss pursuant to Rule 4:6-

 3    2(e) ordinarily is granted without prejudice.  See

 4    Hoffman versus Hampshire Labs Incorporated, 405

 5    N.J.Super. 105, 116 (App. Div. 2009).

 6            The defendant, Franklin Mutual Insurance

 7    Company, hereinafter FMI, issued a business owners

 8    policy to plaintiff, Optical Services USA/JC1 under

 9    policy number SBP2598006 with effective dates of

10    October 5, 2019 to October 5, 2020.  FMI issued the

11    business owners policy to the plaintiff, Stong OD Ewing

12    NJ, LLC, hereinafter Stong OD, bearing policy number

13    SBP2613680 with effective dates of April 1, 2020 to

14    April 1, 2021.  Optical Services USA/JC1 and Stong OD

15    filed separate claims seeking loss of business income

16    caused by the closure mandated by Governor Murphy's

17    March 21, 2020 Executive Order Number 107 suspending

18    the operation of non-essential retail businesses on the

19    account of the Covid-19 pandemic.  Plaintiffs closed

20    their businesses on March 20, 2020 and have not

21    reopened to date.  Plaintiffs allege that Executive

22    Order Number 107 mandated the closure of their

23    businesses.  FMI issued letters dated April 6, 2020 and

24    April 14, 2020 to Optical Services USA/JC1 and Stong OD

25    denying their claims for business income and related

22

1      expenses.  Plaintiffs, Optical Services USA, LLC,

2      Optical Services USA-WO, Re and Le Holdings, LLC were

3      not named insureds on either policy.

4              Both policies contained the BU04010110

5      Business Owners Policy Form.  The plaintiffs allege

6      that the -- the plaintiffs allege that Optical Services

7      USA/JC1, Optical Services USA, LLC, Optical Services

8      USA-WO, Re and La -- and Le Holding, LLC and Stong OD

9      Ewing NJ, LLC purchased business interruption insurance

10     from insurers to protect their business from an -- an

11     unanticipated crisis.  The plaintiffs further allege

12     that the policies issued by FMI provide coverage for

13     loss of income resulting from a necessary interruption

14     of plaintiffs' businesses caused by direct covered

15     losses and temporary closures required by orders of a

16     civil authority.

17              A Complaint for a Declaratory Judgment in

18     this action was filed on June 25, 2020.  The Complaint

19     also included a Demand for Trial by Jury.  No answer

20     has been filed by the defendant, FMI.  Therefore, the

21     discovery end date has not been established in this

22     case.

23              On July 15, 2020, the defendant, FMI, filed a

24     Motion Seeking Dismissal of the Complaint pursuant to

25     Rule 4:6-2(e).  Within days of filing the Complaint,

23

1    the defendant, FMI, filed the within Motion to Dismiss.

2    It is clear that there is no established record in this

3    case and there has been no discovery presented to the

4    Court for consideration with respect to the arguments

5    and events by respective legal counsel.

6    Notwithstanding same, the defendants argued three

7    points before this Court.  The first legal argument is

8    that the Court should dismiss the complaint for failure

9    to state a legally cognizable claim.  The second legal

10   argument is that the plaintiffs did not sustain direct

11   physical loss or direct physical damage to or

12   destruction of covered property precluding coverage for

13   business income or extra expenses under the FMI policy.

14   Lastly, the defendants argue that the plaintiffs

15   occupancy of their respective properties was not

16   prohibited by civil authorities because of a loss at a

17   local premises not owned or occupied by the plaintiffs

18   precluding civil authority coverage under the FMI

19   policies.

20           The plaintiffs argue before this Court that

21   they state claims for coverage under the policies

22   because they suffered a direct covered loss and were

23   forced to close their business by order of a civil

24   authority.  Plaintiffs further allege that they state

25   claims for loss of income coverage because they

1    suffered a direct covered loss under the policy and

2    they state claims for civil coverage because the

3    closure order prohibited the plaintiffs from accessing

4    their business.

5           Naturally, each of the respective arguments

6    advanced by the parties requires a fact-sensitive

7    analysis wherein the respective parties have failed to

8    present a sufficient record before this Court for a

9    legal determination of their respective positions.

10   There has been no discovery produced to the Court for

11   consideration, no affidavits, no certifications, or

12   sworn testimony derived from depositions.  In fact,

13   discovery has not been undertaken by the parties with

14   respect to the declaratory relief sought in the

15   Complaint.  Notwithstanding these deficiencies, the

16   Court will endeavor to address the legal arguments

17   advanced by the respective parties on the extremely

18   limited record provided to the Court.

19          The defendant, FMI, concedes that the

20   plaintiffs' business operations were interrupted by an

21   executive order based on the risk of the Covid-19 virus

22   transmission throughout the State of New Jersey.  The

23   pivotal issue before this Court is the parties'

24   interpretation of the subject policy language and FMI's

25   claim denial premised on a narrow interpretation of the

1    terms of the subject policies.  The issue before this

2    Court is the interpretation of a direct covered loss

3    under the policy and whether or not there was physical

4    damage to the plaintiffs' business.

5         The plaintiffs argue that the loss of

6    physical functionality and the use of their business

7    constitutes a covered loss under the policies.  The

8    plaintiffs argue that Governor Murphy's executive order

9    prohibited access to the plaintiffs' premises.

10        FMI argues that the plaintiffs failed to

11   state a claim for civil authority coverage because the

12   complaint does not allege that property damage occurred

13   elsewhere leading to the loss of access to plaintiffs'

14   business.  The defendant acknowledged in their moving

15   papers that presumably the plaintiffs will argue that

16   while their properties were not physically damaged,

17   they sustained a physical loss by operation of the

18   Governor's executive order.  FMI argues that the

19   plaintiffs' loss of use of their respective properties

20   does not constitute a direct physical loss and

21   therefore is not a direct covered loss defined by the

22   policies.

23        A simple review of the moving papers

24   indicates that the defendant has not provided this

25   Court with any controlling legal authority to support

1    their version of the interpretation of the defined

2    terms in the policy.  In fact, there is limited legal

3    authority in the State of New Jersey addressing this

4    issue.  This is not surprising to the Court as the

5    State of New Jersey was recently faced with a historic

6    event which was unprecedented with respect to the

7    losses sustained by businesses across the State of New

8    Jersey due to the proliferation of the Covid-19

9    pandemic.  The defendant argues that there is a plain

10   meaning of "direct physical loss" and the closure of

11   the plaintiffs' business does not qualify for business

12   -- I'm sorry, qualify for purposes of coverage.  This

13   is a blanket statement unsupported by any common law in

14   the State of New Jersey or by a blanket review of the

15   policy language.  Moreover, there has been no discovery

16   taken in this matter which would provide guidance to

17   the Court with respect to a Motion to Dismiss filed

18   under Rule 4:6-2(e).

19          Pursuant to the legal authority recited by

20   this Court with regard to the standards associated with

21   filing such a motion, the plaintiff should be permitted

22   to engage in issue-oriented discovery and also be

23   permitted to amend its complaint accordingly prior to

24   an adjudication on the merits of any policy language.

25   Such a motion is premature at best.

1          It is noteworthy to mention that the

2     plaintiffs' argument set forth to this Court that the

3     loss of use of their business because the State of New

4     Jersey deemed all non-essential businesses unsafe

5     constitutes a direct covered loss under the policy is

6     the pivotal issue in the absence of any issue-oriented

7     discovery on this topic is whether direct physical loss

8     and direct physical damage encompasses closure for

9     businesses that bears no specific -- relationship to a

10    specific condition on the property pursuant to an

11    executive order.  The plaintiffs counter that argument

12    by alleging that the executive order of the Governor

13    deemed all non-essential businesses unsafe given the

14    risk of transmission of Covid-19 thus the closure order

15    had a specific relationship to a specific condition

16    within the plaintiffs' business.

17          The plaintiffs provide a citation from

18    Wakefern Food Corp. versus Liberty Mutual Fire

19    Insurance Company, 406 N.J.Super. 524 (App. Div. 2019)

20    to support their argument.  Their argument based on the

21    holding of Wakefern is that there was a finding of

22    coverage for a grocery store that lost power when an

23    electrical grid and transmission lines were physically

24    incapable of performing their essential function of

25    providing electricity even though they were not

28

1    necessarily damaged.  The Court in Wakefern did hold

2    that,

3         "Since the term "physical" can mean more than

4    material alteration or damage, it is incumbent on the

5    insurer to clearly and specifically rule out coverage

6    in the circumstances where it was not to be provided."

7         Citing Wakefern versus Liberty Mutual

8    Insurance Company, 406 N.J.Super. at 542.  Also citing

9    Customized Distribution Services versus Zurich

10   Insurance Co., 373 N.J.Super. 480 at page 491 (App.

11   Div. 2004), cert. denied at 183 N.J. 214 (2005).

12        The Court finds such an argument compelling

13   for purposes of surviving a Motion to Dismiss pursuant

14   to Rule 4:6-2(e) in the absence of any complete record

15   for disposition.  Again, the Court notes in the absence

16   of the legal precedent set forth in Wakefern, there is

17   a lack of controlling legal authority presented to the

18   Court for consideration in this regard.

19        "When interpreting insurance contracts, the

20   intention of the parties must be determined from the

21   language of the policy," citing Stone v. Royal

22   Insurance Company, 211 N.J.Super. 246 at page 248 (App.

23   Div. 1986).  "When the terms of the contract are clear

24   and unambiguous, the Court must enforce the contract as

25   written."  That is an incitation at page 248.

1    The language which forms the basis of the

2    complaint and the filing of a Motion to Dismiss is

3    subject to further analysis and interpretation.  By

4    operation of the distinct and opposite interpretations

5    of the language set forth before the Court by the

6    parties with no other clarity from the record having

7    been established to date, which the Court notes is

8    largely non-existent, this Court reaches the inevitable

9    conclusion solely for purposes of disposition of this

10   Motion that the plaintiff should be afforded the

11   opportunity to develop their case and prove before this

12   Court that the event of the Covid-19 closure may be a

13   covered event under the Coverage C, Loss of Income,

14   when occupancy of the described premises is prohibited

15   by civil authorities.  There is an interesting argument

16   made before this Court that physical damage occurs

17   where a policy holder loses functionality of their

18   property and by operation of civil authority such as

19   the entry of an executive order results in a change to

20   the property.

21        The plaintiffs are offering in advancing in a

22   novel theory of insurance coverage in this matter that

23   warrants a denial of the Motion to Dismiss at this

24   early stage of the litigation.  As such, this Court

25   must afford the plaintiffs an opportunity to engage in

Exhibit E - 0032

30

 1    issue-oriented discovery with FMI in order to fully

 2    establish the record with respect to direct covered

 3    losses and to amend the Complaint accordingly if

 4    required.  To that end, the Motion to Dismiss is

 5    denied.

 6            Gentlemen, I will have an order prepared and

 7    most likely uploaded by this afternoon.  Again, I want

 8    to thank you for your briefs and I thank you for your

 9    legal arguments here today.

10            MR. HARRISON:  Thank you, Your Honor.  Have a

11    good weekend.

12            THE COURT:  Thank you, gentlemen.

13            (Proceeding concluded at 10:08:29 a.m.)

14                    *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I, Laura Scicutella, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from <u>9:30:49</u> to <u>10:08:29</u>, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.


| /s/ Laura Scicutella | AD/T 685 |
|---|---|
| Laura Scicutella | AOC Number |

| Phoenix Transcription LLC | 8/18/2020 |
|---|---|
| Agency Name | Date |