# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-23245-Civ-WILLIAMS/TORRES

GRASPA CONSULTING, INC.

      Plaintiff,

v.

UNITED NATIONAL
INSURANCE COMPANY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

      This matter is before the Court on United National Insurance Company's ("Defendant") motion to dismiss Graspa Consulting, Inc.'s ("Plaintiff") amended complaint. [D.E. 15]. Plaintiff responded to Defendant's motion on October 7, 2020 [D.E. 20] to which Defendant replied on October 21, 2020. [D.E. 23]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED**.[1]

---

[1]     On October 21, 2020, the Honorable Kathleen Williams referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 24].

## I.  BACKGROUND

Plaintiff is a commercial enterprise in the restaurant industry that purchased a commercial insurance policy with a period running from May 28, 2019 to May 28, 2020.  The policy provided protection against losses and other expenses that might result from an involuntary interruption in business operations.[2]  In March 2020, Florida Governor Ron DeSantis issued several executive orders that restricted the public's access to the restaurant industry.  Although these orders were later lifted in the months to follow, local governments issued additional orders that restricted access to all non-essential business operations in response to the COVID-19 pandemic.  As a result, Plaintiff suffered significant losses and other expenses that now threaten the future of its business.

When Plaintiff demanded payment for these losses, Defendant denied Plaintiff's claim because Plaintiff did not meet one of the prerequisites for coverage – allegations and evidence of physical loss or damage to the insured property.  Defendant also takes the position that there is no coverage under the insurance policy because it contains a broadly worded exclusion for any loss resulting from a virus or a pollutant.  Plaintiff disagrees because "[d]angerous conditions prohibited access to Plaintiff's property and caused Plaintiff to suffer a direct physical loss when its business operations were suspended and it lost the use of its property." [D.E. 12 at ¶ 61].  Plaintiff therefore filed this action on June 11, 2020 in Florida

---

[2]     The policy provided coverage to ten locations in Miami, Miami Beach, and Coral Gables, Florida.

state court for breach of contract, seeking compensatory damages, prejudgment interest, court costs, and fees.[3]

## II.   APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.

---

[3]   Defendant removed this case to federal court on August 5, 2020 pursuant to the Court's diversity jurisdiction.  Plaintiff is a Florida corporation with its principal place in Florida, and Defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania.

*Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.  ANALYSIS

Defendant seeks to dismiss Plaintiff's amended complaint for two reasons.[4] First, Defendant argues that the insurance policy fails to provide coverage because Plaintiff failed to allege that it suffered any direct physical loss as a result of an involuntary business closure. Defendant claims that this is a requirement for coverage and that every provision in the policy includes this condition. Second, Defendant argues that, even if a direct physical loss had been alleged, the policy

---

[4]     In determining whether Plaintiff's amended complaint fails to state a claim, we may consider the language of the policy itself because exhibits are part of a pleading "for all purposes," and Plaintiff attached it in this case. Fed. R. Civ. P. 10(c); *see also Solis–Ramirez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir. 1985) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."). To the extent the complaint's allegations conflict with the exhibit, the exhibit must control. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.") (citing *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir. 2009)).

contains broad exclusions for viruses and other pollutants that apply to the COVID-19 pandemic.  Before we turn to the merits, we must consider the general principles governing the interpretation of insurance contracts under Florida law.  These principles are necessary, as they will inform the analysis that follows.

### A.    *General Principles of Insurance Contracts*

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).  The interpretation of an insurance contract – including the question of whether an insurance provision is ambiguous – is a question of law.  *See id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

In addition, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).  The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v.*

*Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").

However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).  Where an interpretation "involve[s] exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986)).  An insurance policy must, of course, be ambiguous before it is subject to these rules.  *See Taurus Holdings, Inc.*, 913 So. 2d at 532 ("Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous.").  An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction.  *See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135 (Fla. 1998).  "Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous." *Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling*

6

*Co.*, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 166 (Fla. 2003)).

On the other hand, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996). Ultimately "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

When the parties dispute coverage and exclusions under a policy, a burden-shifting framework applies. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *U.S. Liab. Ins. Co. v. Bove,* 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (alteration added; citations omitted). If the insurer is able to establish that an exclusion applies, the then burden shifts back to the insured to prove an exception to the exclusion. *See id.*; *see also IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) ("When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast solely and entirely within the policy exclusions and are subject to no other reasonable

7

interpretation.").  That is, "if there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion."  *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (citing *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997)).

### B.     *Direct Physical Loss or Direct Physical Damage*

Having set forth the relevant facts and legal principles, Defendant argues that Plaintiff's amended complaint fails to state a claim because the insurance policy only provides coverage for the loss of business income if the covered property suffers a direct physical loss or physical damage.  Defendant claims that every policy provision includes this requirement and that coverage only exists if Plaintiff's property suffered actual harm.  Defendant then references the policy's Business Income and Extra Expense provision where it includes this express condition:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration."  The suspension must be caused by *direct physical loss of or damage* to property, including personal property in the open (or in a vehicle) within 100 feet, at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss.

[D.E. 12-1 at 31 (emphasis added)].

Defendant also states that this condition applies to the Extra Expense and Civil Authority provisions because they too require a direct physical loss or damage to seek relief under the policy:

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no *direct physical loss or damage* to property caused by or resulting from a Covered Cause of Loss.

. . .

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to *direct physical loss of or damage* to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* (emphasis added).  Ultimately, no matter what provision Plaintiff relies upon, Defendant concludes that the amended complaint must be dismissed because an allegation of actual harm – as opposed to pure economic losses – is required to seek relief under the insurance policy.

Plaintiff's response is that, while the policy never defines the meaning of the terms "direct physical loss or damage", there is no evidence that these terms should require a physical alteration to seek coverage.  Instead, Plaintiff asserts that Defendant could have made these terms clear in the policy, but that Defendant failed to do so.  And given Defendant's failure to require any actual harm, Plaintiff requests that we take a broad interpretation of the policy and construe it in favor of the insured.

Plaintiff's next argument is that the proper way to interpret the policy is to look to two sections: the definition of a covered cause of loss and the Business Income and Extra Expense provision.  The policy defines a loss as a "direct physical loss" unless the loss is excluded or limited under the policy.  Plaintiff interprets this definition as meaning that all losses are direct physical losses, including those that are excluded from coverage.  If true, Plaintiff reasons that the meaning of "direct

physical loss" must include something more than actual harm because some of the excluded losses – including losses related to government seizures, nuclear reactions, and war-related damages – do not require any structural or tangible harm.

As support for this interpretation, Plaintiff provides a review of several court cases and how they have interpreted the meaning of a direct physical loss over the last several decades.  Plaintiff traces these cases back to a Colorado action and explores other jurisdictions – including California, Oregon, Minnesota, New Jersey and other states – where courts have found that a direct physical loss can exist when a business only becomes unusable.  In fact, Plaintiff states that the weight of authority leans in its favor and that it shows that there is no requirement for an allegation of tangible physical alteration to avail itself of coverage.  And since there has been fifty-two years of case law that has taken this position, Plaintiff concludes that Defendant's motion to dismiss must be denied.

We begin with the language of the insurance policy.  The policy does not define "direct physical loss" or "direct physical damage."  However, "[t]he mere failure to provide a definition of a term involving coverage does not render the term ambiguous." *Those Certain Underwriters at Lloyd's London v. Karma Korner, LLC*, 2011 WL 1150466, at *2 (M.D. Fla. 2011) (citation omitted).  When a policy does not define a term, the plain and generally accepted meaning should be applied. *See Evanston Ins. Co. v. S & Q Prop. Inv*., LLC, 2012 WL 4855537, at *2 (S.D. Fla. 2012).

Defendant argues that, under the plain meaning of the word "physical", Plaintiff has not alleged coverage for any loss because, by definition, the policy excludes losses that are intangible. *See, e.g.*, 10A *Couch On Insurance* § 148.46 (3d Ed. 1998) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").   This point is well taken because courts in our district have found – both before and in response to the COVID 19-pandemic – that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'"  *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020); *see also Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *3 (M.D. Fla. Sept. 28, 2020) ("Plaintiff argues that economic damage is synonymous with 'physical loss' and is therefore covered under the Policies.  Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that *actual, concrete damage is necessary*.") (emphasis added).

Plaintiff pushes back against this argument with reference to a recent district court's decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at \*4 (W.D. Mo. Aug. 12, 2020), because that case involved the same policy language that is now in dispute.  There, the plaintiffs purchased insurance policies for their hair salons and restaurants.  The policies provided coverage for physical losses or physical damages, and the plaintiffs argued that they should recover the insurance proceeds as a result of the Covid-19 pandemic.  The defendants moved to dismiss because – with the policies requiring either a direct physical loss or damage – the plaintiffs could not recover unless there was an actual, tangible, permanent, or physical alteration to the insured properties.  The district court rejected that argument because "loss" and "damage" could not be conflated with the "or" separated between them.  Instead, the court had to "give meaning to both terms," to avoid the other from being superfluous.  *Studio 417, Inc.*, 2020 WL 4692385, at \*5 (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, 2012 WL 760940, at \* 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous")).

The district court then referenced several decisions where courts have recognized that, absent a physical alteration, a physical loss may occur when a property is uninhabitable or substantially unusable for its intended purpose. *Studio 417, Inc.*, 2020 WL 4692385, at \*5 (citing *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming the denial of coverage but recognizing that "[w]hen the presence of large quantities of

asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.")); *see also Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 509 (1998) (holding policyholders to suffer a "direct physical loss" when their homes were rendered uninhabitable due to threat of rockfall); *W. Fire Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52, 55 (1968) (holding that the policyholder suffered "direct physical loss" when "the accumulation of gasoline around and under the [building caused] the premises to become so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous").

The court also acknowledged that there were cases where an actual alteration was required to show a "physical loss," but distinguished those on the basis that they were, for the most part, decided on a motion for summary judgment, factually dissimilar, or non-binding.  *Id.* (citing *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (affirming the denial of insurance coverage on a motion for summary judgment and under Minnesota law)); *see also*

*Mama Jo's, Inc.*, 2018 WL 3412974, at *8 (granting summary judgment in favor of the insurance company because the plaintiff could not "show that there was any suspension of operations caused by 'physical damage.'") (citing *Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir. 1988) ("[R]ecovery is intended when the loss is due to inability to use the premises where the damage occurs.")).

In light of these decisions, the district court denied the defendant's motion to dismiss because the plaintiffs alleged that COVID-19 was a highly contagious virus that was physically present in viral fluid particles and deposited on surfaces and objects.  The plaintiffs further alleged that the physical substance was on the premises and caused them to cease or suspend operations.  That is, "[r]egardless of the allegations in . . . other cases, Plaintiffs . . . plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable."  *Studio 417, Inc.*, 2020 WL 4692385, at *6.  And that was "enough to survive a motion to dismiss."  *Id.*

When compared to the facts of this case, Plaintiff's allegations are far weaker because it has not even alleged that there was anything on the premises that caused any physical harm.  *See* [D.E. 12 at 60 ("Plaintiff's claim for coverage is not based on a virus contaminating its premises, and Plaintiff is not seeking to be indemnified for the cost of decontamination or business income loss due to contamination of its premises.")].   Instead, Plaintiff claims that Florida's Government suspended the operation of its business.  It is therefore difficult to see

how *Studio 417* is even remotely helpful when the facts of that case are so distinguishable and several courts have found that there must be an allegation of actual harm to seek relief under these terms included in the insurance policy:

> The critical policy language here—"direct physical loss or damage"— similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage.  [Plaintiff] simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its inability to access its office from October 29 to November 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network. The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

Of course, the more important question is how to interpret the insurance policy under Florida law because that is the only law that governs in determining whether Plaintiff has coverage.[5]   And when we examine the language of the insurance policy, "direct physical" modifies both "loss" and "damage."  That means

---

[5]     Although there are not many published decisions on this issue since the COVID-19 pandemic, Florida trial courts have reached the same conclusion in just the last few days.  *See, e.g., Dime Fitness, LLC v. Markel Ins. Co.*, 2020 WL 6691467, at *3 (Fla. Cir. Ct. Nov. 10, 2020) ("Plaintiff does not allege a direct physical loss.  The damage asserted here is business income loss, along with a vague reference to "damage" in the form of a denial of access to the premises. Therefore, this purely economic loss, as well as a lack of access, would not qualify as a covered cause of loss because no direct physical loss has been alleged."); *DAB Dental PLLC v. Main Street America Protection Ins. Co.*, No. 20-CA-5504, at 6 (Fla. Cir. Ct. Nov. 10, 2020) (granting a motion to dismiss because "[t]here is no allegation that COVID-19 physically altered or physically damaged any property. Nor is Plaintiff's lack of access to its own premises a direct physical loss or damage, as those terms are defined by Florida law."); *Mace Marine, Inc. v. Tokio Marine Specialty Ins. Co.*, No. 20-CA-120-P (Fla. Cir. Ct. Oct. 8, 2020).

that "[d]irect and physical modify loss and impose the requirement that the damage be actual." *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. DCA 3d 2017) (quotation marks omitted); *see also Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (finding that any "interruption in business must be caused by some *physical problem* with the covered property . . . which must be caused by a 'covered cause of loss.'"); *United Airlines, Inc. v. Ins. Co. of State of Pa.,* 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid.").[6]

Florida's appellate courts are in agreement with this interpretation. The Third District has found, for instance, that a "loss" constitutes a diminution of value and that, with the modifiers "direct" and "physical," the alleged damage *must be actual*:

---

[6]     Although Florida law is all that matters, there are several recent COVID-19 cases that support the undersigned's interpretation of the insurance policy in this case. Take, for instance, a district court's decision in *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020), where the plaintiff chiropractor sought coverage for the loss of income due to government orders that restricted the plaintiff's ordinary use of its property. The court dismissed the action with prejudice, holding that the plaintiff had failed to demonstrate tangible damage to covered property, as "plainly" required by the policy term "direct physical loss." *Id.* at *8. The same is true in looking at a district court's decision in *10E, LLC v. Travelers Indemnity Co. of Connecticut*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), where the plaintiff sought coverage for income lost as a result of government shutdown orders that prevented the ordinary and intended use of a property. The court dismissed the action, holding that the plaintiffs "cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage," and noting that impaired use or value cannot substitute for physical loss or damage. *Id.* at *5.

> A "loss" is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property.  Loss, *Black's Law Dictionary* (10th ed. 2014).  "Direct" and "physical" modify loss and impose the requirement that the damage be actual.  Examining the plain language of the insurance policy in this case, it is clear that the failure of the drain pipe to perform its function constituted a "direct" and "physical" loss to the property within the meaning of the policy.

*Homeowners Choice Prop. & Cas.*, 211 So. 3d at 1069; *see also Vazquez v. Citizens Prop. Ins. Corp.*, 2020 WL 1950831, at *3 (Fla. 3rd DCA Mar. 18, 2020) ("Consistent with this plain meaning, the trial court determined that the 'insured loss' is the property that was actually damaged."); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably damaged the insured property); *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") (internal quotation marks and citation omitted); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 42 (Ohio Ct. App. 2008).

The Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), is also consistent with our interpretation of Florida law.  There, the plaintiff owned and operated a restaurant and, from December 2013 until June 2015, there was roadway construction in its general vicinity.  The construction generated dust and debris, requiring the plaintiff to

perform daily cleanings.  Although the restaurant was open every day during the roadwork, customer traffic decreased and the business suffered an economic loss. The plaintiff was insured under a policy, which included coverage for loss of business.  This policy covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."  *Id*. at *1 (citation and quotation marks omitted).  The plaintiff submitted a claim to the insurer on the basis that dust and debris caused a loss in business.  The insurer denied that claim because the proof of loss form failed to reflect the existence of any physical damage (and it was questionable whether a direct physical loss occurred).  Thus, the insurer concluded that plaintiff's claim was not covered under the policy.

After finding no error in the district court's decision to exclude several of the plaintiff's experts, the Eleventh Circuit found that the plaintiff failed to show any evidence of direct physical loss or damage.  The plaintiff alleged that his insurance claim had two components: one for cleaning the restaurant and another for the loss of business income.  And in determining whether coverage existed, the Court looked to the same Florida decisions we referenced above and found that "direct physical loss" is defined as a diminution in value and that the modifiers "direct" and "physical" "imposed the requirement that the damage be actual."  *Id*. (citing *Homeowners Choice Prop. & Cas.*, 211 So. 3d at 1069; *Vazquez*, 2020 WL 1950831, at *3).

The Court then examined whether coverage existed for the cleaning claim because the plaintiff's public adjuster testified that cleaning and painting was all

that was required.  In fact, there was no need for the removal or replacement of any items during the construction.  The Eleventh Circuit found that, based on the evidence that the district court considered, the cleaning claim did not constitute a direct physical loss because these expenses were merely economic losses.  *Id*. at *8 ("We conclude that the district court correctly granted summary judgment on Berries' cleaning claim because, under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'") (citing *Maspons*, 211 So. 3d at 1069 (recognizing that "damage [must] be actual"); *Vazquez*, 2020 WL 1950831, at *3 (same)); *see also Universal Image Prods., Inc. v. Fed. Ins*. Co., 475 F. App'x 569, 573 (6th Cir. 2012) ("[C]leaning . . . expenses . . . are not tangible, physical losses, but economic losses."); *MRI Healthcare Ctr. of Glendale*, *Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss 'contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 307 (2003) (same).

The Eleventh Circuit also agreed with the district court, with respect to the business loss claim, because that too required that a suspension of operations be caused by direct physical loss or damage to the property.  Yet, the plaintiff failed to put forward any evidence that it suffered a direct physical loss or damage during the policy period.  And in the absence of any evidence of actual damage, the Eleventh Circuit concluded that the district court was correct in granting the insurer's motion for summary judgment.

Although *Mama Jo's* was not about any closures related to the COVID-19 pandemic nor did it concern the same procedural posture, the plaintiff in that case at least alleged that there was a physical intrusion into the restaurant in the form of dust and debris.  Plaintiff has done nothing similar in this case.  Plaintiff merely claims that Florida's Government temporarily closed its business.  But, this cannot state a claim because – as the cases demonstrate above – the loss must arise to actual damage.  *See Mama Jo's Inc.*, 823 F. App'x at 879 ("'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.") (citing Florida cases).  And it is not plausible how the allegations in this case meet that threshold when Plaintiff's business merely suffered economic losses as opposed to anything tangible, actual, or physical. [7]

Plaintiff tries to sidestep these cases with several clever arguments, but none are effective.  Plaintiff argues, for instance, that there is nothing "physical" about losses related to several exclusions, including losses related to government seizures, nuclear reactions, and war-related damages.  These contentions are not even remotely convincing, in part, because Plaintiff fails to reference any authority and then makes these assertions without any explanation of how these circumstances could occur without actual harm.  [D.E. 20 at 8 ("The losses contemplated by these

---

[7]      Plaintiff tries to pushback against *Mama Jos's* with arguments that the case was decided on a motion for summary judgment and that the Court's discussion of a direct physical loss constitutes dicta.  Neither of these points is persuasive.  The procedural posture is, of course, a distinguishing characteristic but the underlying rule that the Court relied on still applies because the meaning of "direct physical loss or damage" requires actual harm under Florida law.  We also disagree that the Court's discussion on this point constitutes dicta.  But, even if it did, Plaintiff has no answer as to why this is not persuasive nor does Plaintiff grapple with the Florida cases that the Eleventh Circuit relied upon.

exclusions are not 'physical' losses in the sense promoted by Defendant. They encompass losses that do not arise from structural or tangible damage to covered property, but instead deprive the insured of the property's intended use.")].

But, putting aside the conclusory nature of these arguments, they are also illogical because if, for example, a property suffered damage at the hands of a nuclear explosion, that would of course have a direct physical impact on a structure. There is even a question on whether a building would be left standing and, if so, there would still be radiation that could damage the property and trigger coverage under the policy. The same is true if the government seized property or if a structure was damaged during a war. Indeed, Plaintiff's hypotheticals do more harm than good to its position because they highlight the differences between actual harm and economic losses. On one hand, we have hypotheticals where a building is not even left standing and, on the other, there are executive orders that direct a business to temporarily close its doors. They are not remotely the same.

Left with nothing else to rely on, Plaintiff turns its attention to other state and federal court cases to salvage its argument. There is no need to consider any of these cases because we have already considered the Eleventh Circuit's view on this question and, most importantly, Florida's appellate courts. And they are both in agreement that the harm suffered must be actual when interpreting the meaning of these terms in an insurance policy. *See Mama Jo's Inc.*, 823 F. App'x at 879 ("Florida's District Court of Appeals for the Third District has addressed the definition of 'direct physical loss': 'A 'loss' is the diminution of value of something . . .

'Direct' and 'physical' modify loss and impose the requirement that the damage be actual.") (citations omitted); *see also Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) ("Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining.  But, for the reasons already stated, this cannot state a claim because the loss must arise to actual damage.  And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical.").  This means that, even if the cases that Plaintiff references are somehow persuasive, there is no need to consider them if Florida law has already provided a clear answer on the interpretation of these terms in a Florida insurance policy.  Accordingly, Defendant's motion to dismiss should be **GRANTED** for the failure to allege any actual harm to the insured property.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**.  If viable under Rule 11, any amended complaint should be filed within (14) fourteen days from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely

---

[8]     Because Plaintiff's complaint fails for the reasons stated above, we offer no opinion on Defendant's remaining arguments.  To the extent Plaintiff files an amended complaint, it should ensure that it can survive any other exclusion that may exist under the insurance policy.

file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of November, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge